Argued and submitted July 30, 2012; resubmitted en banc March 12, affirmed by equally divided court September 17, 2014, petition for review allowed February 11, 2015 (356 Or 689)

STATE OF OREGON,
acting by and through its
Department of Transportation,
*Plaintiff-Respondent,*

*v.*

ALDERWOODS (OREGON), INC.,
an Oregon corporation,
successor by merger with
Young's Funeral Home, Inc.,
an Oregon corporation,
*Defendant-Appellant,*

*and*

BANK OF AMERICA, N. A.,
a national association,
as administrative agent,
*Defendant.*

Washington County Circuit Court
C085449CV; A146317

336 P3d 1047

Charles F. Hudson argued the cause for appellant. With him on the briefs was Lane Powell PC.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were John

R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Haselton, Chief Judge, and Armstrong, Wollheim, Ortega, Sercombe, Duncan, Nakamoto, Egan, DeVore, Tookey, and Garrett, Judges, and Schuman, Senior Judge.

PER CURIAM

Armstrong, J., concurring.

Sercombe, J., concurring.

Wollheim, J., dissenting.

**ARMSTRONG, J.,** concurring.

As part of a project to improve SW Pacific Highway (Highway 99W) in Tigard, the Oregon Department of Transportation (ODOT or the state) brought a condemnation action against defendant to acquire interests in land owned by defendant that abuts Highway 99W. Among other things, the project involved the reconstruction of the sidewalk on Highway 99W and the elimination of curb cuts and driveways that had allowed vehicular access from defendant's property to the highway. Before trial, the trial court granted the state's motion *in limine* to exclude evidence of the diminution in the value of defendant's land as a result of its loss of access to Highway 99W. The court thereafter entered a general judgment awarding defendant just compensation of $11,792. Defendant appeals the judgment and assigns error to the order granting the state's motion *in limine.* I conclude that the trial court did not err in granting the motion.

Defendant owns a rectangular parcel of property whose southern boundary abuts Highway 99W near the interchange of Highway 99W and Highway 217 in Tigard. Before the state undertook to improve Highway 99W, defendant's property had direct vehicular access to Highway 99W through two driveways. The property also has indirect access to Highway 99W from Warner Avenue, which abuts the western boundary of the property and intersects Highway 99W. To orient the reader, a map of the property is included as an appendix to the opinions in this case.

As noted, ODOT undertook to improve the portion of Highway 99W that includes the highway abutting defendant's property. The state filed a condemnation action against defendant in September 2008 to acquire a temporary easement across a portion of defendant's property "for the purpose of a [construction] work area" and to acquire "[a]ll abutter's rights of access, if any," to Highway 99W. One month later, ODOT sent defendant a notice of the removal of defendant's unpermitted approaches to Highway 99W, which advised defendant that ODOT had no record of a permit for defendant's driveways and that defendant's unpermitted approaches to the highway—*viz.,* its driveways—would be eliminated with the reconstruction of the sidewalk

on Highway 99W. The notice also advised defendant that it could submit to ODOT an application for a permit for an approach to Highway 99W from defendant's property or could provide proof that the existing approaches had been established before 1949.[1]

Significantly, however, ODOT rules establish minimum safety standards for an approach to a state highway such as Highway 99W, and those standards require an approach to be located at least 750 feet from a highway interchange. *See* OAR 734-051-0125 (2008) (Table 5). Under that standard, no approach to Highway 99W would be permitted from defendant's property, because the entire length of the property that abuts Highway 99W is less than 750 feet from the interchange of Highway 99W and Highway 217. As it is, defendant did not respond to the ODOT notice, and, accordingly, ODOT constructed the sidewalk abutting the property without curb cuts or driveways that would allow vehicular access from the property to Highway 99W.

The state subsequently filed a motion *in limine* in the condemnation action that sought to exclude any evidence of the diminished value of defendant's property due to its loss of access to Highway 99W. The state argued that the denial of access resulting from the elimination of the curb cuts and driveways constituted a denial of access to promote the efficient and safe use of the highway, that is, a regulatory restriction on access to the highway to promote its use as a highway and, consequently, that the denial of access as a result of those restrictions did not constitute a taking of the access for which compensation would be due under Article I, section 18, of the Oregon Constitution. In the state's view, because the regulatory restriction on access did not constitute a taking and because the property has access to Warner Avenue, any reduction in the value of defendant's property as a result of its loss of access to Highway 99W was not compensable. Hence, it sought to exclude evidence of the

---

[1] The reference to 1949 reflects that ODOT had established its permit system for approaches to state highways in 1949, so approaches established before 1949 would not have required a permit. *Cf.* OAR 734-051-0040(26) (2008) (defining "Grandfathered approach" under ODOT permit system as a legally constructed approach that existed before 1949).

diminished value of the property due to its loss of access to Highway 99W on the ground that the evidence was not relevant.

The trial court agreed with the state and granted its motion *in limine*. The parties then stipulated that defendant was entitled to an award of $11,792 as just compensation for the temporary construction easement over defendant's land, but that the stipulated amount did not include compensation for the taking of defendant's right of access to Highway 99W. The trial court entered judgment accordingly. Defendant appeals, assigning error to the order granting the state's motion *in limine*, which we review for legal error. *See, e.g., State v. Cunningham*, 337 Or 528, 536, 99 P3d 271 (2004), *cert den*, 544 US 931 (2005) (exclusion of evidence on relevance grounds reviewed for legal error).

It is helpful to begin by reviewing Oregon law on access to public roads from abutting property. Owners of real property in Oregon have a common-law right of access to public roads that abut their property. The legislature modified that principle for state highways in 1951 with its enactment of ORS 374.405, which denies abutting landowners a right of access to state highways "constructed, relocated or reconstructed after May 12, 1951." The road at issue in this case is a state highway, but the state does not contend that ORS 374.405 applies to deny defendant a right of access to the highway.

Denying access to a road to a property owner who has a common-law right of access to the road can constitute a taking of that right for which compensation would be owed under Article I, section 18, of the Oregon Constitution. For example, the construction of an irrigation ditch that denied landowners access to a road in *Sweet et al. v. Irrigation Canal Co.*, 198 Or 166, 191, 254 P2d 700, *reh'g den*, 256 P2d 252 (1953), constituted a taking of the owners' access rights because the ditch involved a use of the right of way of the road for a purpose *other than* a road purpose. As the court explained, an impairment of an abutting owner's right of access to a highway "caused by the use of the highway for other than legitimate highway purposes is a taking within the meaning of the constitution." *Id.* The measure of

damages for the loss of access to a road is the diminution in the value of the land resulting from the loss of access.

However, it is well established in Oregon that governmental regulation or modification of a road for road purposes that denies a landowner access to the road does *not* give rise to a compensable taking of the owner's access right. For example, the court held in *Oregon Investment Co. v. Schrunk*, 242 Or 63, 408 P2d 89 (1965), that Portland's decision to establish a 24-hour bus-loading zone that spanned the entire length of a city block and, as a consequence, that denied abutting landowners any access from their property to the affected street, did not constitute a taking of the owners' access to the street. The court acknowledged that the owners' right of access to the street was a property right but concluded that the right was "subservient to the primary rights of the public to the free use of the streets for the purposes of travel and incidental purposes." *Id.* at 69 (citations omitted). The court went on to explain:

> "It is apparent that the concern of the city in refusing to allow a curb cut on SW Fourth Avenue and thereby barring the use of the sidewalk on that street for the passage of automobiles going into and leaving plaintiffs' property, was with the public safety and convenience—with the safety in a heavily congested area of pedestrians, including persons boarding and departing from buses, and the safe and orderly movement of automobile traffic. * * * It may be that some depreciation in the value of plaintiffs' property or some lessening of profits from their parking business has resulted—though neither is alleged. But if so, it is *damnum absque injuria*. There was no 'taking' of plaintiffs' property within the meaning of Article I, section 18, of the Oregon Constitution. As this court said in *Brand v. Multnomah County*, [38 Or 79, 92, 60 P 390, *aff'd on reh'g*, 62 P 209 (1900)] * * *:
>
> > "'Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision.'"

242 Or at 71 (citation omitted); *see also Barrett et al. v. Union Bridge Co.*, 117 Or 220, 223-24, 243 P 93, *reh'g den*,

117 Or 566, 245 P 308 (1926) (change of street grade for bridge approach that denied property owner access to the street was not a compensable taking of access right); *Brand*, 38 Or at 95-99 (same).

Notwithstanding those decisions holding that a complete loss of access to a road is not a compensable taking of access when the loss is caused by the regulation or modification of the road for road purposes, the Supreme Court concluded in *dictum* in *State Highway Com. v. Burk et al.*, 200 Or 211, 265 P2d 783 (1954), that the conversion of a conventional highway to a limited-access highway, with the concomitant loss of access to the highway by abutting landowners, requires the government to condemn the access rights of the abutting landowners, because denying the owners access to the highway would constitute a compensable taking of their access right. The issue in *Burk* was whether the state could construct a highway in the first instance as a limited-access highway and thereby not be required to pay abutting landowners for a loss of access that they never had.

In concluding that the state could do that, the court noted the important public transportation and safety goals achieved by limiting access to a highway:

"In direct contrast with the land-service function of the conventional highway is the purpose and function of the non-access freeway or throughway. The congestion of population in the cities, the amazing increase of rapid automobile transportation, the delays and perils incident to the use of the conventional two-way unrestricted-access highways have rendered imperative the establishment of non-access or limited-access highways or freeways in the interest of the public convenience and necessity. * * *

"It is reliably reported that travel upon our inadequate highways results in 40 thousand deaths, a million-and-a-half injuries, and property damage of 2 billion dollars a year, and that these staggering losses have been materially reduced wherever modern non-access highways have been established."

*Id.* at 231 (citation omitted).

Although the court recognized the public transportation and safety benefits of limited-access highways,

it nonetheless said that "it is almost universally held that [the vested right of access of abutting landowners to a conventional highway] can be divested only by condemnation of the easement appurtenant to the abutting property." *Id.* In other words, although it would serve important highway purposes to convert a conventional highway to a limited- or non-access highway by denying abutting landowners access to the highway, the denial of access would nonetheless constitute a compensable taking of the owners' access rights.

The implicit premise of the *Burk dictum* appears to be that the conversion of a conventional highway to a limited-access highway is too great a change in the use of the highway to be included among the changes to which the access rights of abutting landowners can be understood to be subservient. In other words, landowners can expect their access to a conventional highway to be subject to impairment as a result of governmental decisions to regulate or modify the highway to better serve the public use of the highway as a highway, including impairment to the point of a denial of all access to the highway, *see, e.g., Schrunk,* 242 Or at 71, so long as the impairment does *not* result from a decision to convert a conventional highway to a limited- or non-access highway and thereby to eliminate "the land-service function" of the highway.

The distinction implicit in the *Burk dictum* cannot withstand examination. It simply does not make sense to distinguish between a change to a highway for highway purposes that denies *one* abutting landowner all access to the highway—which is not considered to constitute a taking of the owner's access rights—and a change to a highway for highway purposes that denies *all* abutting landowners access to the highway—which the *Burk dictum* concludes would constitute a taking of the owners' access rights. Both changes should be treated the same for purposes of Article I, section 18.

In fact, the *Burk dictum* cannot be squared with the analysis that applies to governmental regulations that affect land. Under that analysis, regulations affecting land do *not* constitute a taking of the land or any interest in it

unless the regulations leave the owner with no economically viable use of the land. *See, e.g., Coast Range Conifers v. Board of Forestry*, 339 Or 136, 146-51, 117 P3d 990 (2005). The loss of all economically viable use of land conceivably could occur from the conversion of a conventional highway to a limited- or non-access highway if the conversion left a landowner with no access to the owner's land. However, absent such an effect, a conversion would *not* constitute a taking even though the value of the affected owners' land was significantly diminished as a result of the owners' loss of access to the highway.[2]

We relied on the *dictum* in *Burk* to affirm a trial court decision in *Douglas County v. Briggs*, 34 Or App 409, 578 P2d 1261 (1978), *aff'd on other grounds*, 286 Or 151, 593 P2d 1115 (1979), that had held that a county's decision to convert a conventional county road to a limited-access road—thereby denying abutting landowners access to the road—constituted a compensable taking of the owners' access rights because the loss of access had reduced the value of the owners' land. We recognized that a government can qualify or restrict access to a road by an abutting landowner "to protect the public safety, convenience and welfare," and we cited the Supreme Court's decision in *Schrunk* as support for the principle that "[s]uch restrictions do not constitute a taking so long as an adequate means of access remains available to the abutting property owner." *Id.* at 414. However, our decision in *Briggs* can be reconciled with *Schrunk* only through reliance on the *Burk dictum*.

---

[2] Judge Wollheim contends in his dissent that the *Burk dictum* is based on the Oregon statutes that apply to the state's acquisition of land and interests in land for highway purposes. 265 Or App at 600 n 6 (Wollheim, J., dissenting). That is not correct. The *dictum* asserts that

"it is almost universally held that [the vested right of access of abutting landowners to a conventional highway] can be divested only by condemnation of the easement appurtenant to the abutting property."

*Burk*, 200 Or at 231. That is a statement of a constitutional principle applied by other courts, not a statement about the proper interpretation of an Oregon statute. To the extent that *Burk* applied Oregon condemnation statutes, it did so based on the court's understanding of Article I, section 18. As for Judge Wollheim's assertion that I rely in my concurrence on the proposition that the Supreme Court disavowed in *Douglas County v. Briggs*, 286 Or 151, 593 P2d 1115 (1979), its *dictum* in *Burk*, see 265 Or App at 600 n 6 (Wollheim, J., dissenting), I do not assert nor believe that the Supreme Court has disavowed the *Burk dictum*. *See* 265 Or App at 578-82 (Armstrong, J., concurring).

As noted earlier, the landowners in *Schrunk* had lost all access to one street but still had access to their property from adjoining streets. *Schrunk*, 242 Or at 71. The Supreme Court recognized that the loss of access to the one street may have reduced the value of the owners' land, but that reduction in value did not constitute a taking under Article I, section 18, because the restriction on access that had caused the reduction served the public use of the road as a road. *Id.* In *Briggs*, the landowners had lost access to the road that had been converted to a limited-access road, but they still had access to an adjoining road. Nonetheless, we held that the loss of access to the one road constituted a taking under Article I, section 18, because, although the land could still be used for the residential and farming purposes for which it historically had been used, the land could not be developed for commercial purposes, and, hence, its value had been reduced by the loss of access. *Briggs*, 34 Or App at 414-15. In other words, the loss of value due to the loss of access was a compensable taking of the access in *Briggs* but not in *Schrunk* even though the denial of access in both cases served the public use of the respective roads as roads. Hence, our decision in *Briggs* necessarily depended on the *Burk dictum* as support for the principle that a denial of access to an abutting road constitutes a compensable taking of the access if the denial is imposed to convert a portion of an existing road to a limited-access road. *See also id.* at 413 (*Burk* cited as source for principle that common-law right of access "may not be extinguished without just compensation").

The Supreme Court allowed review of our decision in *Briggs*. It ultimately affirmed our decision, but it did so based on its construction of the statute under which the county had acted in *Briggs* to convert the county road to a limited-access road, ORS 374.420, which the legislature had adopted in 1965. *Briggs*, 286 Or at 154-57. The court's construction of the statute depended, in turn, on its understanding of the legislative history of the statute. That history convinced the court that the legislature had enacted ORS 374.420 to give counties the authority to convert existing roads to limited-access roads but had conditioned that authority on a requirement that counties had to pay abutting landowners for their loss of access. *Id.*

Because the court resolved *Briggs* on the basis of its understanding of ORS 374.420, the court took

> "no position one way or the other whether Article I, section 18, of the Oregon Constitution mandates payment for loss of rights of access in a situation like the present. Despite defendants' common law right of access, we believe the matter to be one of considerable doubt in situations in which the access is terminated for purposes [that] have to do with the use of the county road as a public road."

286 Or at 156-57 (footnote omitted).

Although the Supreme Court did not reach the constitutional issue in *Briggs*, the correct resolution of the issue is that a denial of access to a road in the circumstances presented in *Briggs*—*viz.*, a denial of access for abutting landowners to an existing road to promote the efficient and safe use of the road—is not a taking of the owners' access rights that would require compensation to be paid to the owners under Article I, section 18, for their loss of access. In other words, *Schrunk*, *Barrett*, and *Brand* establish the correct constitutional principle in those circumstances, not the *dictum* in *Burk*.

Against that background, I turn to defendant's challenge to the trial court's exclusion of evidence on the diminished value of defendant's land due to its loss of access to Highway 99W. Defendant contends that the measure of damages for the condemnation of its right of access to Highway 99W is the diminished value of its land due to its loss of access to Highway 99W. Hence, the trial court erred in excluding evidence on that measure of damages. The premise that necessarily underlies that argument is that, *but for the condemnation of the access to Highway 99W*, the property *would* have access to Highway 99W. If that were true—that is, if the property *would* have access to Highway 99W but for the condemnation of access to it—then the diminution in the value of the property due to its loss of access *would* be the measure of damages that defendant could recover for the condemnation of its right of access to Highway 99W.

However, as a result of ODOT's regulatory decision to eliminate the curb cuts and driveways to Highway 99W, which resulted in a loss of access to Highway 99W for which compensation is *not* owed, *see, e.g.*, *Schrunk*, 242 Or at 71,

defendant's property does *not* have access to Highway 99W irrespective of whether the state condemned the access. Hence, defendant was not entitled to recover damages measured by a loss of access *that it does not have*. It follows that the trial court did not err in excluding evidence relevant to *that* measure of damages.

In summary, the state condemned defendant's access rights in the context of a project that would—and did—result in a regulatory denial of access to Highway 99W to promote the safe and efficient use of the highway as a highway. Whatever the measure of damages could be in those circumstances, it is *not* the diminished value of the land resulting from the loss of access to Highway 99W because, as a result of the regulatory elimination of the curb cuts and driveways, the property has *no* lawful access to Highway 99W irrespective of the condemnation of the access to the highway.[3] As the trial court correctly concluded, evidence addressed to a measure of damages based on the loss of access was irrelevant.[4] I conclude, therefore, that the trial court's judgment should be affirmed.

---

[3] In contrast, had defendant established in response to ODOT's notice on the removal of defendant's approaches to Highway 99W that the approaches, *viz.*, the driveways, had been lawfully established before 1949, ODOT may have concluded under its rules that it was required to allow the approaches to remain. *Cf.* 265 Or App at 575, 575 n 1 (discussing notice sent to defendant on removal of unpermitted approaches and ODOT rule on approaches lawfully established before 1949). Under that circumstance, defendant would have had access to Highway 99W but for the condemnation of it, and the diminished value of the property due to its loss of access arguably could have been an appropriate measure of damages for the loss. Given the posture of this case, I need not consider what measure of damage *other than* the diminished value of defendant's land due to its loss of access to Highway 99W might have been an appropriate measure of damages for the condemnation of defendant's access to Highway 99W.

[4] Among other things, the dissent claims support for its contrary conclusion from the Supreme Court's decision in *Briggs*. It reasons that the Supreme Court's construction of ORS 374.420, the 1965 statute that applied to the county's conversion of a conventional county road to a limited-access road in *Briggs*, should apply to the 1947 statute under which the state condemned defendant's right of access to Highway 99W, ORS 374.035. 265 Or App at 602-03 (Wollheim, J., dissenting). The court's construction of ORS 374.420 in *Briggs* was very much driven by the legislative history behind the statute's enactment, which led the court to conclude that the legislature intended *to require* counties to pay landowners for their loss of access to a county road when the county converted the road to a limited-access road. *See* 286 Or at 153-56. I do not doubt that the 1947 legislature understood that landowners had a common-law right of access to state highways and, hence, that it enacted ORS 374.035 to provide authority for the state to acquire access rights by condemnation when the state believed it necessary to do that to restrict

Ortega, Duncan, DeVore, and Garrett, JJ., join in this concurrence.

**SERCOMBE, J.,** concurring.

The central issue in this appeal is whether defendant Alderwoods (Oregon), Inc., had a property interest in specific, direct access to Highway 99W that the state could acquire by eminent domain. I conclude that it did not; defendant never had a real property interest to use its actual or any other specific, substitute driveways along its highway frontage. Thus, there was no "private property" to acquire by eminent domain, and the trial court did not err in excluding damage evidence for the purported taking.[1]

Judge Armstrong's concurrence concludes that defendant did have a located common-law right of access in and to the highway that the state could acquire in eminent domain, but that this right of access was lost by administrative actions of the state that closed the driveways to highway traffic. 265 Or App at 582-83 (Armstrong, J., concurring). The concurrence ultimately determines that, by the time of the condemnation trial, defendant had no private property interest in highway access to acquire, and that its valuation evidence was properly excluded as immaterial.

The dissent surmises that defendant did have such a property interest (largely because the state pleaded that it did in its complaint and because two state statutes purportedly describe such an interest), that the property interest was not regulated out of existence, and that defendant's valuation evidence was relevant to the calculation of just compensation for the forced purchase of that interest. 265

---

access to a state highway. However, there is no legislative history of which I am aware comparable to the history behind the enactment of ORS 374.420 that establishes that the 1947 legislature intended to require the state to pay landowners for access rights without regard to whether Article I, section 18, requires the state to pay for them.

[1] The eminent domain proceeding on appeal was the formal exercise of the state's condemnation authority under Article I, section 18, of the Oregon Constitution, which provides that "[p]rivate property shall not be taken for public use *** without just compensation." The Fifth Amendment to the United States Constitution imposes the same requirement. We have interpreted both takings clauses to have the same reach.

Or App at 601-02, 610 (Wollheim, J., dissenting). I write to distinguish my analysis of the affected property interest from that of the concurrence, but to join with its ultimate conclusion that the valuation evidence was immaterial.

Briefly recounting the procedural history of the case, the state filed a complaint in eminent domain, seeking to acquire a temporary construction easement on property owned by defendant, as well as "[a]ll abutter's rights of access, if any, between [defendant's property] and the Pacific Highway West [Highway 99W]." At the time that the complaint was filed, defendant had two driveways at the frontage of the property that allowed access to the highway. The property was also connected to the highway by Warner Avenue, a street that runs along one side of the property and intersects with the highway. That public approach to the highway is not located "between [defendant's property] and the Pacific Highway West [Highway 99W]," so the state did not seek to acquire any access right of defendant to the highway through the public street in the eminent domain proceeding. Shortly after the complaint was filed, the state closed the driveways along the front of the property by constructing a curbed sidewalk at those locations and requiring defendant to obtain a permit for any further or additional private approaches to the highway.

Before the condemnation trial, the state filed a motion *in limine* to preclude the introduction of evidence of any loss of value of defendant's property caused by the driveway closures at trial. It argued that defendant had no private property interest—that is, no specific "rights of access" in the driveways or otherwise along the frontage— for the state to acquire under Article I, section 18, of the Oregon Constitution. The state contended that, because the complaint sought to obtain only existing access rights along the frontage, and none specifically existed, no compensable taking resulted from the closure of the driveways. Thus, according to the state, any evidence of the loss of value of defendant's property from that closure was immaterial. Defendant, on the other hand, asserted that, by the complaint, the state sought to acquire specific access rights at the location of the driveways and that the acquisition of that

private property by the state would diminish the value of defendant's remaining property. The trial court agreed with the state and granted the motion *in limine*.

We start with a proposition to which all agree: As a matter of eminent domain law, there is no right to compensation for a loss or restriction of access to an abutting street if access to the property is not completely eliminated by the project for which other property is being condemned. Thus, in *City of Salem v. Merritt Truax*, 70 Or App 138, 688 P2d 120 (1984), as part of a street-widening project, the city condemned a narrow strip along one edge of a service station property, closing one of its three driveways. We upheld the dismissal of the service station owners' counterclaim for inverse condemnation of the street access, reasoning that

"[a]n owner of land abutting a street has a common law right to access to his property from the road. However, the rights of abutting proprietors to access to their premises are subservient to the public's right to free use of the streets. That right is protected by the state's exercise of its police power. An interference with access rights that is an exercise of the city's police power is not a compensable taking.

"It is well settled that changing a public road to provide for public safety and convenience is a legitimate exercise of a city's police power. Thus, we conclude that the closure of defendants' driveway was not a compensable taking. Defendants point out that the change in driveways has made it less convenient to enter the station and has resulted in a decline in business. The closure has also made it harder for defendants to get fuel, because it must now be specially delivered because tanker trucks can no longer pull into the station. Those matters are *damnum absque injuria* and not compensable."

*Id*. at 140-41 (citations omitted); *see also Argo Investment v. Dept. of Transportation*, 66 Or App 430, 432, 674 P2d 620 (1984) ("Plaintiffs continue to have access to their property for the principal purpose for which it is used. The fact that traffic has to use a more circuitous route * * * may be inconvenient, affecting the use, but it does not rise to the constitutional magnitude requiring compensation.").

The common law of Oregon on access rights to highways was summarized in a similar way in William E. Duhaime, *Limiting Access to Highways*, 33 Or L Rev 16, 34 (1953), as follows:

"It is submitted that, in view of the cases above discussed, the common law of Oregon is as follows:

"(a) A total deprivation of all access to a piece of property is a 'taking' within the meaning of the Oregon Constitution for which compensation must be paid.

"(b) Where some means of ingress and egress remains, although not the most convenient one, access to a particular street or highway may be regulated or prohibited without liability to the abutting owner for compensation, so long as the regulation or prohibition is to promote the public use of the highway for highway purposes. Here, the injury suffered by the abutting owner is consequential to a lawful use of the highway, and is *damnum absque injuria*. No distinction should be made between a tangible improvement to the highway (change in grade, etc.) and an intangible one (control of access), so long as some other means of access is available, the improvement is lawful, the improvement does not physically encroach upon the abutting property, and the improvement is for highway purposes."

Put another way, the only property interest in street access held by an abutter at common law is a general, unfixed, right to access the street. That is, a general right of access to the street exists either directly from the frontage of the property along the street or indirectly from a private or public approach that borders the property. Unless a government takes that entire interest—both the direct and indirect access—no compensation is owed under Article I, section 18. As the court noted in *ODOT v. Hanson*, 162 Or App 38, 44, 987 P2d 538 (1999), *rev den*, 330 Or 252 (2000):

"At common law, any property owner has a right of access to public thoroughfares. *State Highway Com. v. Burk et al.*, 200 Or 211, 228, 265 P2d 783 (1954). But the right of access is specific to no particular location and, thus, is subject to regulation by the state without compensation as long as some reasonable access remains available. Thus, the court

was careful to hold in *Oregon Investment Co. [v. Schrunk, 242 Or 63, 408 P2d 89 (1965)]* that the state was authorized to deny access to a property at one location 'if adequate means of access remain to the owner at the other street or streets.' [242 Or at 73.] That makes sense, because the common-law right entitles the owner only to access generally, not access at a particular location. As a result, when the state regulates access merely at a particular location, there has been no taking of the common-law right, because access remains available."

*See also Barrett et al. v. Union Bridge Co.*, 117 Or 220, 224, 243 P 93 (1926) (same); *Deupree v. ODOT*, 173 Or App 623, 629, 22 P3d 773 (2001) ("Where access to private property is retained through another public road, even though that access may be less satisfactory, the loss of direct highway access is not compensable."); *Curran v. ODOT*, 151 Or App 781, 784-85, 785 n 3, 951 P2d 183 (1997) ("Generally, any act by the state that affects the use of a highway for legitimate 'highway' purposes does not result in a taking of access rights to the highway that is compensable under Article I, section 18, even if that action interferes with the abutting property owner's access to the highway from the property."); *Gruner v. Lane County*, 96 Or App 694, 697, 773 P2d 815 (1989) (holding that regulatory restrictions on "abutting landowner's right of ingress and egress" are not compensable when landowner has adequate alternative means to access property).

As those cases make clear, no compensation is owed to defendant under Article I, section 18, for the loss of the use of its driveways because defendant has no particular "private property" right to use those driveways to travel to and from the highway and, because defendant retains access through Warner Avenue, the state's action does not take defendant's general right of access to the highway.

The dissent does not disagree with that constitutional analysis. It concludes, however, that defendant has a statutory property right to use the driveways under ORS 374.035(1), which regulates the conversion of a highway to a throughway. The state concedes that it is condemning a construction easement as part of a throughway conversion project. ORS 374.035(1) provides:

"The Department of Transportation may, in the name of the state, acquire by agreement, donation or *exercise of the power of eminent domain,* fee title to or any interest in any real property, including easements of air, view, light and access, *which in the opinion or judgment of the department is deemed necessary for the construction of any throughway, the establishment of any section of an existing state road or highway as a throughway* or the construction of a service road. The department may accomplish such acquisition in the same manner and by the same procedure as real property is acquired for state highway purposes, except that in case the acquisition is by proceedings in eminent domain the resolution required under such procedure shall specify, in addition to other provisions and requirements of law, that the real property is required and is being appropriated for the purpose of establishing, constructing and maintaining a throughway."

(Emphases added.)

ORS 374.035(1) allows the department to exercise the power of eminent domain in order to acquire "any interest in any real property" that is "necessary" to establish a throughway (a highway with no access or dispersed access from interchanges or public streets) or to convert an existing highway to a throughway. In order to convert a highway to a throughway, then, it is necessary to eliminate all access rights of an abutter to the highway—both the direct access from the property frontage and indirect access from an adjacent connecting street. The authority to condemn *that* entire property interest does not imply, as suggested by the dissent, that there is a "direct access right"—a particular and discrete access easement for highway abutters—that is created by ORS 374.035(1).

That same general right of access, and not a specific easement, is the "right of access" referenced in ORS 374.405, which provides that there are "[n]o rights in or to any state highway, including what is known as right of access" for abutters to state highways constructed, relocated, or reconstructed after May 12, 1951. In my view, neither ORS 374.035 (directly) nor ORS 374.405 (by implication) creates statutory property interests for particular access to state highways that can only be divested from the abutting property owner

by a voluntary or forced conveyance. Therefore, defendant was not owed compensation from the state for its driveways under those statutes.[2]

The dissent finally contends that the state in this case has pleaded that it must acquire defendant's property interests in the driveways so that it is now stuck with paying for that acquisition, even if defendant has no such property interests and the state disclaims any intent to acquire those interests. *See* 265 Or App at 602 (Wollheim, J., dissenting) ("The state cannot, on the one hand, seek to *acquire* an abutting landowner's right of direct access through eminent domain and, on the other, claim that there is no right to establish just compensation for the taken property right." (Emphasis in original.)).

As noted, the state pleaded in its complaint that it intended to acquire "[a]ll abutter's rights of access, *if any*, between [defendant's property] and the Pacific Highway West." (Emphasis added.) I interpret that allegation to seek an initial determination of whether there is any right of access at that location. If such a located right of access exists, then the state sought to acquire it by condemnation. If it does not, then the only property to be acquired, and for which compensation is owed, is the construction easement. That is the plain meaning of the words "if any" in the complaint—that a taking is intended *only if* defendant has a right of access along the frontage. Further, that is the meaning the state gave to the complaint in its pretrial offers of compensation and in its motion *in limine*, and it is, implicitly, the meaning the trial court gave to the complaint when it granted the motion *in limine*.

---

[2] Even if defendant did obtain a discrete access right from the state for its driveways, any access rights exist solely by express or implicit permission from the state under the statutory regime set out at ORS 374.300 to 374.360 and rules adopted by the Department of Transportation, OAR chapter 734, division 51. The remedy for closure of an approach road to a state highway is the administrative claim process for compensation that is set out in ORS 373.313. Such a permit or allowance is not, in my view, "private property" that can be "taken" for "just compensation" under Article I, section 18. *See Kinross Copper Corp. v. State of Oregon*, 160 Or App 513, 519, 524-25, 981 P2d 833, *adh'd to on recons*, 163 Or App 357, 988 P2d 400 (1999), *rev den*, 330 Or 71 (1999) (denial of wastewater discharge permit is not an inverse condemnation of unpatented mining claim; "an owner cannot maintain an action for loss of a property right that it did not ever have").

In *State Highway Com. v. Burk et al.*, 200 Or 211, 220, 265 P2d 783 (1954), the state filed a complaint seeking to condemn one parcel of land needed for the construction of a nonaccess highway, as well as all rights of access to the new highway, "'if any there be,'" from other property not taken. The trial court determined that the condemnation of land for highway construction did not create rights of access in abutting land. Thus, no compensation was owed for loss of any access rights. That determination was affirmed on appeal. The pleading of an intent to take access rights "if any there be" was sufficient to place before the trial court the question of whether any access right or property interest existed at all. The same is true here where the state pleaded an intent to take access rights *"if any."*[3] (Emphasis added.)

Thus, the filing of a complaint did not lock the state into having to pay for something that does not exist. Instead, the pleading required the court to determine if defendant has a property right in the driveways or other specific passageways from its property to the highway that must be acquired by the state in order to limit access to the highway. If so, then the complaint pleads an intent to acquire that property interest and pay just compensation for the property. The state is not, however, obliged to purchase defendant's driveways simply because it sought to determine if a compensable access right existed.

In sum, because defendant has no real property interest in the particular driveways that it used to access Highway 99W or other specific "rights of access" along the property's frontage with the highway, and because the state did not propose to acquire defendant's general right of access that might exist at common law or under state statutes, the only "private property" that was taken by the state through the complaint and under the judgment was the construction easement. Thus, the trial court did not err in refusing

---

[3] Even if the complaint actually stated an intent to take specific and located access rights along the frontage, the dissent does not explain why the state's motion should not be treated as an abandonment of that claim. *See* ORCP 23 A (leave to amend complaint shall be freely given when justice so requires); *cf.* ORCP 23 B (allowing amendments to pleadings to conform to the evidence at trial).

to admit evidence of just compensation for any diminution in value of defendant's property after the elimination of the driveways. Its judgment should be affirmed.

**WOLLHEIM, J.,** dissenting.

This is an eminent domain proceeding brought by the Oregon Department of Transportation (ODOT or the state) against defendant Alderwoods (Oregon), Inc. Defendant assigns error to the trial court's granting of the state's motion *in limine* to exclude evidence at trial of the diminution in value of defendant's property resulting from the condemnation of defendant's abutter's right of direct access to and from SW Pacific Highway (Highway 99W). The two concurring opinions present alternative rationales in support of the trial court's ruling. Those rationales are based on legal premises not put forward by the state on appeal. They also rely on case law governing regulatory takings rather than eminent domain and overlook controlling Supreme Court precedent that, in my view, requires a reversal of the trial court's ruling. I accordingly dissent, and write to explain why the case law and statutes compel the conclusion that, in the posture of this case, the trial court erred in excluding defendant's evidence of damages. Defendant is entitled to its day in court to prove, if it can, the amount of its damages, if any, as a result of the state condemning defendant's property.

As described in the two concurring opinions, defendant's property has frontage along Highway 99W and, until this condemnation proceeding, also had direct access to Highway 99W by two driveways. As part of a project to improve Highway 99W, ODOT rebuilt the sidewalks on Highway 99W abutting the subject property and eliminated the driveways.

ORS 35.346 provides that, at least 40 days before the filing of any action for condemnation, "the condemner shall make a written offer to the owner or party having an interest to purchase the property or interest, and to pay just compensation therefor[.]" In compliance with ORS 35.346, in June 2008, the state made an offer to compensate defendant for a temporary easement necessitated by the reconstruction

of the sidewalks and for its acquisition of defendant's abutter's right of direct access to Highway 99W. In an "Acquisition Summary Statement," the state offered "just compensation" for conveyance of defendant's access rights:

### "CONVEYANCE OF ACCESS RIGHTS

"For the true and actual consideration of $3,150.00, **ALDERWOODS (OREGON), INC., an Oregon corporation by merger with YOUNG'S FUNERAL HOME, INC., an Oregon corporation,** Grantor, as the owner of the property [described] does convey and relinquish unto the **STATE OF OREGON, by and through its DEPARTMENT OF TRANSPORTATION,** Grantee, all abutter's rights of access between the real property hereinabove described and [Highway 99W]."

(Boldface in original.)

Defendant declined the offer, and the state, acting through ODOT, initiated this eminent domain proceeding to acquire defendant's abutter's right of direct access, as well as a temporary easement on defendant's property for the purpose of a work area. In September 2008, the state filed a complaint alleging that the acquisition consisted of "[a]ll abutter's rights of access, if any," and "[a] temporary easement across the property * * * for the purpose of a work area." The complaint prayed that "an assessment be made by a jury empanelled in this action to determine the compensation to be paid for the acquisition herein sought to be condemned and appropriated."

Before trial, in September 2009, the state filed its first motion *in limine*, seeking to exclude any evidence of a diminution in the value of the subject property as a result of defendant's loss of its direct access to Highway 99W. The state contended that such evidence was irrelevant, because the elimination of defendant's abutter's right of access did not result in a compensable taking. Rather, the state asserted, in acquiring defendant's direct access to Highway 99W, it was merely exercising its power to regulate access to a public highway.

While the litigation was pending, in October 2008, ODOT sent defendant notice of "Removal of Unpermitted

Approach" to Highway 99W, advising defendant that there was no valid permit on record for its driveways and that the unpermitted approach would be removed as a part of the sidewalk upgrade. The notice advised defendant that it could submit an application for an approach or provide proof that the approach was in existence before 1949. The notice specified the amount of time defendant had to respond, but defendant did not make any response to that notice.

In a second motion *in limine*, the state sought to exclude evidence of any issues that it asserted were related to ODOT's administrative closure of defendant's access, including claims of damages.

The trial court granted the state's first motion *in limine*.[1] The parties then stipulated that defendant was entitled to damages of $11,792, in compensation for the temporary construction easement; they also agreed that the stipulated amount did not include compensation for the taking of any abutter's right of access to Highway 99W. The trial court entered judgment for defendant, and defendant appeals, assigning as error the trial court's granting of the state's first motion *in limine*.[2]

In ruling on the state's motion *in limine* to exclude evidence of the loss in value of defendant's property, the trial court accepted the state's position that, in view of defendant's indirect access to Highway 99W by way of Warner Avenue, the loss of direct access did not result in a compensable taking; thus, evidence of damages was irrelevant. In reviewing the correctness of that ruling on appeal, the legal question is a narrow one: Is defendant entitled to put on evidence to establish a right to compensation for the state's acquisition, through eminent domain, of its common-law abutter's right of direct access to Highway 99W? For the reasons explained herein, I conclude that the trial court erred in ruling that defendant is not entitled in this eminent domain proceeding to put on evidence of damages resulting from the loss of direct access. I would therefore reverse the trial court's judgment and remand for further proceedings.

---

[1] The trial court never ruled on the state's second motion *in limine*.

[2] ODOT filed a cross-appeal but withdrew its cross-appeal in its answering brief.

The Fifth Amendment to the United States Constitution provides that "[p]rivate property [shall not] be taken for public use, without just compensation." Similarly, under Article I, section 18, of the Oregon Constitution, "[p]rivate property shall not be taken for public use * * * without just compensation[.]" Thus, when property is "taken" by the government, just compensation must be paid. *Thornburg v. Port of Portland*, 233 Or 178, 185, 376 P2d 100 (1962).

Private property can be "taken" for public use or benefit through the exercise of the power of eminent domain—that is, the sovereign can exercise its inherent power to take or authorize the taking of any property within its jurisdiction for a public use or benefit. *GTE Northwest, Inc. v. Public Utility Commission*, 321 Or 458, 466, 900 P2d 495 (1995); *Dept. of Trans. v. Lundberg*, 312 Or 568, 571 n 1, 825 P2d 641, *cert den*, 506 US 975 (1992). Under Oregon law, "just compensation" for a taking is determined based on the fair market value of the property that is being taken. Fair market value, in turn, is "defined as the amount of money the property would bring if it were offered for sale by one who desired, but was not obliged, to sell and was purchased by one who was willing, but not obliged, to buy." *Lundberg*, 312 Or at 574. If the condemner and the property owner are not able to agree on "just compensation," the issue is tried to the jury or a court. *See* ORS 35.305(2) ("Condemner and defendant may offer evidence of just compensation, but neither party shall have the burden of proof of just compensation.").

A taking can also occur through governmental regulation that has the effect of rendering one's property valueless, *Cope v. City of Cannon Beach*, 317 Or 339, 344, 855 P2d 1083 (1993), also known as a "regulatory taking." As the United States Supreme Court explained in *Pennsylvania Coal Co. v. Mahon*, 260 US 393, 415, 43 S Ct 158, 67 L Ed 322 (1922), "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Under both state and federal law, a regulatory taking will occur when a landowner has been deprived of all substantial beneficial or economically viable use of the property. *Homebuilders Assn. v. Tualatin Hills Park & Rec.*, 185 Or App 729, 734, 62 P3d 404 (2003). An owner of real

property may bring an inverse condemnation claim against a governmental entity to recover the value of property taken by the entity through a regulatory taking. *See Boise Cascade Corp. v. Board of Forestry*, 325 Or 185, 187 n 1, 935 P2d 411 (1997). This case presents an opportunity to understand and clarify the intersection of the law pertaining to eminent domain and governmental regulation in the context of public roads.

Contrary to Judge Sercombe's concurrence, 265 Or App at 587 (Sercombe, J., concurring), it is well settled that, at common law, a landowner whose property abuts a public highway has a right of direct access to the highway from the property.[3] That right of access is treated at common law as a property right analogous to an easement and cannot be extinguished through condemnation without compensation. *State Highway Com. v. Burk et al.*, 200 Or 211, 228, 265 P2d 783 (1954) ("When a conventional highway is established, there is attached to the abutting land an easement of access in, and to, the highway. Such an easement is a property right which cannot be extinguished without compensation."). But, as this court said in *ODOT v. Hanson*, 162 Or App 38, 44, 987 P2d 538 (1999), *rev den*, 330 Or 252 (2000), a right of access to public roads is not absolute. We said in that case that "any property owner has a right of access to public thoroughfares," but the right of access is not specific to any particular location and is subject to regulation by the state in the interests of public safety, without compensation, as long as some reasonable access remains available. *Id.* at 44. Through regulation, the state is entitled to restrict access to a public highway in the interests of public safety, and no compensation is due if other adequate means of access remain to the owner at other streets. *Id.* (citing *Oregon Investment Co. v. Schrunk*, 242 Or 63, 73, 408 P2d 89 (1965)).

_____

[3] However, that common-law right applies only to abutters of public highways that were constructed before May 12, 1951. ORS 374.405 provides:

"No rights in or to any state highway, including what is known as right of access, shall accrue to any real property abutting upon any portion of any state highway constructed, relocated or reconstructed after May 12, 1951, upon right of way, no part of the width of which was acquired prior to May 12, 1951, for public use as a highway, by reason of the real property abutting upon the state highway."

Apparently recognizing the inherent tension in bringing a condemnation action to *acquire* defendant's right of access and also asserting that the taking does not give rise to a right to compensation, on appeal, the state understandably diminishes emphasis on the law relating to eminent domain and focuses instead on the state's regulatory authority over access to public highways. On appeal, the state recharacterizes the issue as whether its action—which it describes not as the acquisition of an abutter's right of access but as the elimination of the curb cuts—resulted in a compensable taking. That action, the state explains, is nothing more than an exercise of the state's regulatory power over access to public highways, and, because defendant retains access to its property from Highway 99W via Warner Avenue, the trial court correctly granted the state's motion *in limine* to exclude all evidence relating to "any diminution in value of defendant's property resulting from the elimination of the curb cuts." However, the state did not purport merely to *regulate* defendant's access to Highway 99W by the elimination of curb cuts. True, it did that in a separate administrative proceeding initiated after this action, but in this action, the state sought also to *acquire* defendant's abutter's right of access through eminent domain.[4]

It is undisputed that, in bringing this condemnation proceeding, the state acted pursuant to ORS 374.035(1), which authorizes ODOT to exercise the power of eminent domain to acquire title to or an interest in private property—including access—for the establishment, construction, or maintenance of an existing road as a "throughway"[5]:

---

[4] The state's second motion *in limine* sought to exclude evidence of damages resulting from the unappealed administrative closure of defendant's driveways. The trial court never ruled on the state's second motion. Nor did the state amend its pleadings to rely on the administrative closure or defendant's failure to challenge it.

[5] ORS 374.010 defines a "throughway" as

"a highway or street especially designed for through traffic, over, from or to which owners or occupants of abutting land or other persons have no easement of access or only a limited easement of access, light, air or view, by reason of the fact that their property abuts upon the throughway or for any other reason."

The state alleged in its complaint and there is no dispute that the section of highway involved in this case is to be improved and maintained as a "throughway."

"The *Department of Transportation may*, in the name of the state, acquire by agreement, donation or *exercise of the power of eminent domain*, fee title to or any interest in any real property, *including easements of* air, view, light and *access*, which in the opinion or judgment of the department is deemed necessary for the construction of any throughway, *the establishment of any section of an existing state road or highway as a throughway or the construction of a service road.* The department may accomplish such acquisition in the same manner and by the same procedure as real property is acquired for state highway purposes, except that in case the acquisition is by proceedings in eminent domain the resolution required under such procedure shall specify, in addition to other provisions and requirements of law, that the real property is required and is being appropriated for the purpose of establishing, constructing and maintaining a throughway."

ORS 374.035(1) (emphases added). When the state exercises the power of eminent domain to improve a state throughway, ORS 374.055 provides, in part, that

"the entire plan of improvement is admissible for the purpose of determining:

"(1)   Value of property taken.

"(2)   All damages by reason of deprivation of right of access to any highway to be constructed, established or maintained as a throughway."

In defendant's view, ORS 374.055 requires that, when the state chooses not merely to regulate, but to *acquire* the direct access of an abutting landowner through the power of eminent domain, the property owner is entitled to present evidence of damages resulting from the loss of a right of access. For that reason, defendant asserts, the trial court erred in excluding its evidence of damages resulting from the state's acquisition of its abutter's right of direct access to Highway 99W.

In addition, as previously noted, 265 Or App at 596 n 3 (Wollheim, J., dissenting), ORS 374.405 provides:

"No rights in or to any state highway, including what is known as right of access, shall accrue to any real property abutting upon any portion of any state highway constructed,

relocated or reconstructed after May 12, 1951, upon right of way, no part of the width of which was acquired prior to May 12, 1951, for public use as a highway, by reason of the real property abutting upon the state highway."

Although ORS 374.405 actually *proscribes* abutting rights of access for state highways constructed *after May 12, 1951*, defendant asserts that, by implication, it protects access rights like the abutter's common-law right of access to highways, like Highway 99W, constructed *before May 12, 1951*. In defendant's view, when ORS 374.405 is considered in light of ORS 374.035(1) and ORS 374.055, the required conclusion is that, when the state chooses to condemn an abutting landowner's right of direct access, the owner is entitled to a determination of just compensation by a jury.

Defendant's view is supported by the legislative history of ORS 374.405. In written testimony before a 1951 legislative committee, the chief counsel of the Oregon State Highway Commission wrote:

"An abutting owner has and possesses access to an existing highway. That right of access is a property right which cannot be taken from him without payment by the public of just compensation. In order to produce an access controlled highway by converting an existing highway into a throughway, the abutting owners' right of access must be acquired. If it cannot be acquired by agreement, then it may be acquired by the exercise of the right of eminent domain. But in either event, just compensation must be paid to the abutting owner."

Testimony, House Committee on Transportation, HB 619, Apr 25, 1951 (statement of J. M. Devers, Chief Counsel, Oregon State Highway Commission). The witness explained that, without ORS 374.405, landowners whose properties abutted new roads would have a common-law abutter's right of access that could only be acquired through eminent domain. *Id.*

The Supreme Court had an opportunity in *Burk,* to address the abutter's common-law right of access in the context of OCLA, §§ 100-16, a predecessor statute of ORS 374.035, which provided that the State Highway Commission may commence an action in the circuit court

"for the condemnation of such interests as such owner or owners may have in said real property, including any and all right of access if the real property to be acquired is for right of way purposes, and for determining the compensation to be paid therefor, and the damages, if any there be, for the taking thereof."

*Burk*, 200 Or at 227 (internal quotation marks omitted). After concluding that the statute is applicable when the state seeks to convert a conventional highway into a nonaccess highway by condemning only an easement of access, the court stated:

"When a conventional highway is established, there is attached to the abutting land an easement of access in, and to, the highway. Such easement is a property right which cannot be extinguished without compensation."

*Id.* at 228.

The state rejects the precedential value of *Burk*, asserting that more recent case law establishes that no compensation is due as a result of the state's acquisition of a right of access, unless the taking leaves property landlocked or results in the closure of an access point previously reserved by deed, as in *Hanson*. In other words, in the state's view, an acquisition of access to a public highway is simply a way by which the state regulates public highways, and results in a compensable taking only if it results in a total loss of economic value and viable use of the property.[6]

---

[6] In his concurrence, Judge Armstrong acknowledges that discussion in *Burk*, but describes it as *dicta* which he says the court subsequently disavowed in its opinion in *Douglas County v. Briggs*, 286 Or 151, 156-57, 593 P2d 1115 (1979). 265 Or App at 581 (Armstrong, J., concurring). Although I agree with Judge Armstrong that the court's construction of OCLA sections 100-16 (when a state seeks to convert a conventional highway into a nonaccess highway by condemning only an easement of access, the state must pay compensation for the taking) in *Burk* was *dicta*, it was persuasive *dicta* that I would choose to follow. *See State v. Brewer*, 260 Or App 607, 613, 320 P3d 620, *rev den*, 335 Or 380 (2014) (following persuasive Supreme Court *dicta*). Further, and contrary to Judge Armstrong's suggestion, 265 Or App at 582 (Armstrong, J., concurring) the *dicta* from *Burk* on which I rely did not depend on constitutional principles. Rather, the court's discussion was in the context of its interpretation of OCLA sections 100-16, the predecessor statute to ORS 374.035(1), which authorized the State Highway Department to bring an action to acquire by condemnation an owner's right of access. And, contrary to Judge Armstrong's argument, the court, in its subsequent opinion in *Briggs*, did not disavow that discussion in *Burk*: It did not even cite the case. The court merely took no position on whether Article I, section 18,

Respectfully, the state's argument confuses the state's power of eminent domain, through which the state *acquires* a property owner's interest, with the state's regulatory power, through which the state regulates highways for the public safety. In the regulatory context, it is well established that no compensation is due when the government undertakes to regulate an abutting property owner's access, unless the owner's loss of use of the property is virtually total. *See, e.g., Schrunk*, 242 Or at 68-70 (holding in declaratory judgment proceeding that city's denial of property owner's application for access to parking lot from street designated as 24-hour bus loading zone was a reasonable exercise of regulatory power and not a taking); *Barrett et al. v. Union Bridge Co.*, 117 Or 220, 224-25, 243 P 93, *reh'g den*, 117 Or 566, 245 P 308 (1926) (in action to enjoin bridge developer from constructing bridge approach in front of the plaintiff's property, holding that construction of bridge approach so as to eliminate the plaintiff's access did not result in compensable taking of an abutting owner's property and access); *see also Deupree v. ODOT*, 173 Or App 623, 629, 22 P3d 773 (2001) (in inverse condemnation claim, holding that change in grade of a state highway for legitimate regulatory purposes, which did not deprive abutting landowner of all highway access, did not result in "legal damage or injury" within the meaning of ORS 105.755 for which owners are entitled to just compensation); *Dept. of Transportation v. DuPree*, 154 Or App 181, 185, 961 P2d 232, *rev den*, 327 Or 621 (1998), *cert den*, 526 US 1019 (1999) (in inverse condemnation action for widening of state highway, the state's regulatory change from two points to one point of access was not a taking); *Curran v. ODOT*, 151 Or App 781, 786-87, 951 P2d 183 (1997) (holding that inverse condemnation claim challenging as a regulatory taking the state's placement of a guard rail that blocked former access was not ripe for adjudication, where owners had failed to apply for permit for alternative approach, and it therefore was not possible to

---

of the Oregon Constitution would require payment when "access is terminated," reasoning that the statute it was interpreting, ORS 374.420(1), provided sufficient, independent ground on which to base the conclusion that a property owner must be compensated for a taking of access when an adjacent road is made into a throughway. *Briggs*, 286 Or at 156. That conclusion is consistent with the *dicta* that I have cited from *Burk* and, as discussed later in this dissenting opinion, also supports my interpretation of ORS 374.035(1).

assess whether a taking had occurred as a result of a deprivation of all reasonable access). In short, the state is correct that the state's lawful exercise of its regulatory power to limit or even to eliminate access to a public highway for regulatory purposes does not result in a regulatory taking of an abutting landowner's right of access, unless the owner is deprived of *all* reasonable access to the property from the highway. *See Curran*, 151 Or App at 787.

But, when, as here, the state *condemns* the right of access, the analysis is quite different. Condemnation results in a taking of the easement for access. *Burk*, 200 Or at 245 ("A condemnation proceeding is an action *in rem*. It is not the taking of rights of designated persons, but *the taking of the property itself.*" (Emphasis in original.)). In its complaint, the state alleged that it was acquiring defendant's access, and the state does not contend on appeal that it is not acquiring an interest in defendant's property. Under that circumstance, ORS 374.035(1) requires that the state pay compensation for the taking, and ORS 374.055 requires that defendant be permitted to put on evidence of "[a]ll damages by reason of deprivation of right of access." The state cannot, on the one hand, seek to *acquire* an abutting landowner's right of direct access through eminent domain and, on the other, claim that there is no right to establish just compensation for the taken property right.

Our conclusion finds support in the Supreme Court's opinion in *Douglas County v. Briggs*, 286 Or 151, 593 P2d 1115 (1979). In *Briggs*, the county took action to establish an existing county road as a throughway pursuant to ORS 374.420(1), which provides:

> "The county court or board of county commissioners may acquire by purchase, agreement, donation or exercise of the power of eminent domain, fee title or any interest in real property, including easements of air, view, light and access, which is necessary for the construction of a throughway or the establishment of a section of an existing county road as a throughway."

The court noted that the statute does not specifically provide that counties must compensate property owners whose rights of access to adjacent county roads are terminated.

*Briggs*, 286 Or at 154. The court explained, however, that "the specified means of acquisition" described in the statute indicates that

> "the property owner must agree to the termination of his rights of access unless the county acquires the right by condemnation. This, in turn, suggests that the rights of access cannot be terminated except by payment unless they are donated to the county by the property owner."

*Id.* After reviewing the legislative history of ORS 374.420(1), the court concluded that "the legislature intended that property owners be compensated for the termination of their rights of access upon the conversion of an ordinary county road into a throughway." *Id.* The court held that "ORS 374.420 requires the county to pay property owners for the loss of their rights of access when an established county road adjacent thereto is made into a throughway." *Id.* at 156. The court further held that, under ORS 374.420, the question of whether the property owner is entitled to compensation for loss of adequate and reasonable access is a question of fact. *Id.* at 157.

I recognize that ORS 374.420 is not directly applicable here, because it relates to county roads rather than to state highways. Additionally, the legislative history of ORS 374.420 to which the court referred obviously does not bear on the legislature's intent with respect to ORS 374.035(1). However, given the similarity of the statute's text to ORS 374.035(1), the court's opinion in *Briggs* supports the view that, if the Supreme Court had the opportunity to determine whether there is a right to just compensation for access rights condemned under ORS 374.035(1), the court would conclude that "the specified means of acquisition" described in the statute "suggests that the rights of access cannot be terminated except by payment" unless they are donated to the state by the property owner. *Briggs*, 286 Or at 154; *see Davis v. Wasco IED*, 286 Or 265, 272, 593 P2d 1152 (1979) (whenever possible, courts should attempt to construe statutes on the same subject as consistent and in harmony with one another).[7]

---

[7] Judge Armstrong would resolve this case on constitutional principles, *see* 265 Or App at 582 (Armstrong, J., concurring).

The state cites this court's opinion in *Hanson*, 162 Or App at 41-44, in support of its position that an elimination of a right of access along a state highway does not result in a taking if there is other reasonable access on another public road. In my view, there are portions of that opinion, read in isolation, that can plausibly support either party's position but that, when the case is understood in its entirety, the state's reading is not persuasive. In *Hanson*, the state had purchased a portion of the property owners' property in 1951 for the development of State Highway 20 (Highway 20) in Bend. The deed had expressly reserved the property owners' right of access to Highway 20 at a designated location. In 1992, the state condemned a portion of the property owners' property as part of a highway widening project. The property owners applied for a permit to construct an access road from their property to Highway 20 at the location specified in the 1951 deed, and the state denied the application, citing public safety concerns. *Id.* at 41. In the condemnation proceeding, the property owners filed a counterclaim for inverse condemnation, seeking just compensation for the decrease in the value of the remaining property because of the denial of access. The state asserted that it was not obligated to pay for the denial of access, because the property owners had another means of access. The trial court rejected the state's contention and submitted the property owners' claim for compensation to the jury.

On appeal, the state contended that the trial court had erred in denying its motion for a directed verdict on the property owners' inverse condemnation counterclaim, contending that "the law does not require the state to compensate property owners for a loss of access to a public highway, particularly when other means of access remain available." *Id.* at 43. The property owners responded that they did not merely claim that they had lost access to a public highway; they claimed that they lost access at a specific location reserved to them by deed:

> "According to plaintiffs, it is irrelevant that they may have other access to the highway, because they owned a right to a particular route of access, which has been taken without compensation in violation of state and federal constitutions."

*Id.* This court agreed with the property owners. In affirming the trial court's decision to allow the inverse condemnation counterclaim to go to the jury, we explained:

"In this case, plaintiffs' predecessors in interest conveyed land to the state, subject to the reservation of an easement of access to Highway 20 at a location specifically described in the deed. Although nonpossessory, an easement is an interest in land. *Bunnell v. Bernau*, 125 Or App 440, 442, 865 P2d 473 (1993). When it is taken by government action, compensation must be paid. *Thornburg v. Port of Portland*, 233 Or 178, 185, 376 P2d 100 (1962). A 'taking' may occur either by outright condemnation or by governmental regulation of use that has the effect of rendering an owner's property valueless. *See, e.g., Boise Cascade Corp. v. Board of Forestry (S42159)*, 325 Or 185, 935 P2d 411 (1997); *Cope v. City of Cannon Beach*, 317 Or 339, 855 P2d 1083 (1993). In this case, there is no dispute that the effect of the state's denial of plaintiffs' application for a permit to use their easement effectively renders the easement valueless. It necessarily follows that the state has taken the easement, a property right, and that the state and federal constitutions require that the state must pay compensation in consequence."

*Id.* at 43-44. Notably, and contrary to the implication of Judge Sercombe's concurrence 265 Or App at 587 (Sercombe, J., concurring), *Hanson* is factually distinguishable. The plaintiffs' property in *Hanson* did abut the highway; their predecessors had deeded to the state the property adjacent to the highway, and the plaintiffs held only an express easement for access. The opinion related to an inverse condemnation claim resulting from a denial of the permit to use the easement. This court concluded that the denial of the permit rendered the easement valueless, resulting in a regulatory taking.

The state cites a different portion of *Hanson* that it asserts supports its position:

"The state insists that, under [*Schrunk*], it is entitled to restrict access to a public highway without compensation in the interests of public safety. The statement is true as far as it goes. At common law, any property owner has a right of access to public thoroughfares. [*Burk*, 200 Or at 228]. But the right of access is specific to no particular location

and, thus, is subject to regulation by the state without compensation as long as some reasonable access remains available. Thus, the court was careful to hold in [*Schrunk*] that the state was authorized to deny access to a property at one location 'if adequate means of access remain to the owner at the other street or streets.' [*Schrunk*], 242 Or at 73. That makes sense, because *the common-law right entitles the owner only to access generally, not access at a particular location. As a result, when the state regulates access merely at a particular location, there has been no taking of the common-law right, because access remains available.*

"But that is not what happened in this case. Plaintiffs reserved not a general common-law right of access, but an easement of access to a specific highway at a specific location. When the state denied them access at that location, there was a taking of precisely—and entirely—what had been reserved in the deed."

162 Or App at 44 (emphasis added). In the state's view, the emphasized text supports its position that a condemnation action seeking to acquire a common-law right of access such as defendant's along a particular abutting street is not compensable if access is available from other abutting streets, because defendant's right of access is general and not specific to any location. But, in making that statement, we were addressing only the state's right to *regulate* the common-law right of "any property owner" to access public roads in the interests of public safety. We did not purport to address the question here raised about an *abutting* landowner's right to just compensation when the state seeks to *acquire* the landowner's abutter's right of direct access. (That is a distinction that the concurring opinions do not appreciate.) Nor did we hold that when, as here, the state seeks to acquire an abutter's right of direct access, the property owner is not entitled to present evidence of damages resulting from the taking.

Finally, contrary to the state's contention, the Supreme Court's opinion in *Highway Com. v. Central Paving Co.*, 240 Or 71, 399 P2d 1019 (1965), is not helpful to its position. In that case, the defendants owned a sand and gravel business that did not abut the highway but that had indirect access to the highway by means of a graded crossing over a railroad right-of-way owned by Southern Pacific Railroad. The state sought to condemn a portion of the defendants' land

for construction of a frontage road in connection with the widening, improvement, and maintenance of the highway as a throughway. *Id.* at 72. Citing ORS 374.035, the defendants sought to introduce and the trial court admitted evidence of the value of the condemned property that included consideration of "circuity of travel" resulting from the defendants' loss of what the defendants characterized as "direct" access to the highway over the railroad grade. *Id.* at 73. The trial court refused to give the state's requested instruction that "nothing can be awarded * * * on account of inconvenience caused by circuity of travel." The trial court also gave an instruction, to which the state excepted, that permitted the jury to consider the interference with the defendants' access in determining the damage, if any, to the property not taken. *Id.* at 73-74.

On appeal, the Supreme Court reversed the trial court. The Supreme Court rejected the defendants' contention that the case was controlled by ORS 374.035, explaining that the defendants did not have an interest in real property that was subject to that statute. Contrary to the state's argument here, the court did not base its reasoning on the conclusion that an abutter's right of access is not an interest in real property for which compensation must be paid. Rather, the court concluded that the defendants in that case did not have an abutter's right of access to the highway *because their property did not abut the highway. Id.* The court explained that, although the construction of the throughway created an impediment in travelling between the defendants' land and the new highway, that inconvenience was the same kind of inconvenience suffered by the general public and was not a deprivation of an interest in land. *Id.* at 74-75. Unlike in this case, the property owners in *Central Paving* had no interest in property that was subject to ORS 374.035(1); thus, that case has no bearing on that statute's operation when the state seeks to acquire such an interest.

Here, it is not disputed that the state was entitled to eliminate defendant's driveways in the exercise of its regulatory authority over public highways. But this court need not consider whether the elimination of both driveways along Highway 99W constituted a "regulatory taking" for

which defendant would be entitled to compensation. That question is not before us, because defendant did not challenge ODOT's administrative closure of its access.[8] However, because the state sought also to acquire defendant's right of access through eminent domain, defendant is entitled to establish just compensation for that taking.

In his concurring opinion, Judge Armstrong acknowledges that defendant has an abutter's right of direct access to the highway and that the state's removal of the access can result in a taking under Article I, section 18, of the Oregon Constitution, *if* the state's use is for a purpose other than a road purpose. But, in Judge Armstrong's view, any modification of a road for road purposes that denies a landowner's access does not give rise to a compensable taking. In so concluding, Judge Armstrong discounts as *"dictum"* the Supreme Court rationale in *Burk* that an abutter's right of access to a conventional Highway "can be divested only by condemnation of the easement appurtenant to the abutting property." 200 Or at 231. Judge Armstrong explains that the court's conclusion in *Burk* cannot be reconciled with the court's analysis in more recent cases in the context of regulations that affect road access. *See, e.g., Schrunk,* 242 Or at 73 (holding in an inverse condemnation case that the abutting landowner's right of direct access was subservient to the City of Portland's proper exercise of its governmental powers for purposes of public safety and convenience, and that the elimination of access from the landowner's property to the affected street did not constitute a taking). If, Judge Armstrong's concurrence reasons, a government's regulation of land does not result in a taking unless it leaves the owner with no economically viable use of the land, *see, e.g., Coast Range Conifers v. Board of Forestry,* 339 Or 136, 146-51, 117 P3d 990 (2005), then, necessarily, absent such a complete loss in economic value, the state's condemnation of an abutter's right of access cannot constitute a taking. Respectfully, Judge Armstrong's attempted reconciliation of *Burk* and *Schrunk* cannot be squared with a holistic view of the case

---

[8] Nor does *the state* argue, as asserted by Judge Armstrong, 265 Or App at 582-83 (Armstrong, J., concurring), that no compensation is due because defendant has no right of access, it having been previously terminated by regulatory action.

law, which shows that there is a difference between eminent domain and regulation. It also cannot be squared with the Supreme Court's holding in *Briggs*, 286 Or at 154-57, in which the court construed ORS 374.420, a statute similar to ORS 374.035, on which the state relies in this case as the source of its authority to condemn defendant's right of direct access, and in which the court held that the county's authority to convert an existing road into a limited access road was conditioned on the county paying the abutting landowner for loss of access. Because I conclude that the state is similarly required to compensate defendant under ORS 374.035 and to permit defendant to introduce evidence of damages "by reason of deprivation of right of access" under ORS 374.055, I would not reach the conclusion that Judge Armstrong reaches in his concurring opinion that no compensation is required under the Oregon Constitution.

I note, finally, that Judge Armstrong supports his conclusion with an argument that the state has not made for itself: that the state's regulatory closure of direct access from defendant's property by elimination of curb cuts means that defendant's property does not have a right of direct access and therefore suffered no loss in value due to the condemnation of the right of access.

In his concurring opinion, Judge Sercombe shares his view that defendant does not have and never had a common law right of direct access to Highway 99W that could be subject to compensation; rather, he asserts, the only property interest in street access held by an abutter at common law is a general, unfixed right to access the street, either directly from frontage of the property along the street or indirectly from a private or public approach that borders the property, and, unless a government takes that entire interest—both direct and indirect access—no compensation is owned under Article I, section 18. As I have explained in this dissenting opinion, I would resolve this case under ORS 374.035 and therefore would not reach the constitutional question. But I nonetheless believe that Judge Sercombe's position is contradicted by the cases discussed herein.

Finally, Judge Sercombe characterizes my position to be that defendant is entitled to compensation for the loss

of its right of access at the particular locations of the driveways, 265 Or App at 588 (Sercombe, J., concurring), but that is not my view. My position is only that, in this eminent domain proceeding for the acquisition of defendant's abutter's right of direct access to Highway 99W, defendant is entitled to establish just compensation for that taking. It may be that, because the state has the authority to regulate access to a public highway and has done so in this case, defendant would not ultimately be able to prove that it has been damaged by the state's acquisition of its common-law abutter's right of access. But that is a matter of proof. Contrary to the state's contention in its motion *in limine*, and the views expressed in both concurring opinions, the state's acquisition of defendant's abutter's right of access through eminent domain did result in a taking for which defendant is entitled to put on evidence of damages.

As the court said in *Briggs*, the factors for determining just compensation for a taking of access include "the highest and best use of particular property and whether its access to a public road for such use is adequate and reasonable or has been impaired." 286 Or at 157; *see also State Dept. of Transportation v. Schoppert*, 82 Or App 311, 314, 728 P2d 80 (1986) (instruction correctly advised jury that it was to consider the nature of the landowner's remaining access in assessing damages). I would conclude that the trial court erred in excluding evidence of the diminished value of defendant's property as a result of the state's acquisition of defendant's direct right of access to Highway 99W and that the case should be remanded for further proceedings.

Accordingly, I respectfully dissent.

Haselton, C. J., Nakamoto, J., Egan, J., Tookey, J., and Schuman, S. J., join in this dissent.

# APPENDIX