Argued April 1; reversed May 19; rehearing denied
June 30, 1931.

## AIL et ux. *v.* CITY OF PORTLAND
(299 P. 306)

*Herbert L. Swett,* of Portland (Dey, Hampson & Nelson, and Richard R. Morris, all of Portland, on the brief), for appellants.

*Frank S. Grant,* City Attorney, and *L. E. Latourette,* Deputy City Attorney, both of Portland, for respondent.

BROWN, J. By assignment of error number 3, plaintiffs assert that the court erred in instructing the jury as follows:

"In cases where the uses of the street by the public are found by the city council to call for an arrangement that may have the effect of shutting off access to abutting property or rendering such access less convenient, the city may go forward and construct such improvement without being liable in any respect to the abutting property owner, though his property be rendered less valuable or the use thereof be less convenient."

Assignment number 4 relates to an instruction reading:

"If, therefore, you find in this case that the city council adopted and approved the plan of this street arrangement as the same has been substantially carried out, you will not allow any damage to the plaintiffs that may be sustained as the result of such construc-

tion, even though it partially shuts off access to the property of the plaintiffs from the Grover street side, if it left plaintiff a convenient access to his property another way.''

The question before us has been the subject of much litigation in our own and in other jurisdictions. We note the case of *Teague v. City of Bloomington*, 40 Ind. App. 68 (81 N. E. 103), where the appellant Teague brought action against the city to recover damages for personal injuries alleged to have been received by having tripped and being thrown over a wire which was attached to the top ends of five small stakes that had been driven into the ground about four feet apart and left projecting about 12 inches above the edges of the intersection of two sidewalks at a crossing of two public streets in that city. The cause was put at issue, and on trial the defendant had verdict. The plaintiff assigned error of the court in overruling his demurrer to that portion of the amended answer which reads, in part, as follows:

''That, prior to the bringing of the action, Sixth street, at the point referred to in the plaintiff's complaint, was improved by defendant, according to plans and specifications adopted by the defendant, as by law required, and that, in the construction of said street at said point, a brick sidewalk six feet wide was constructed along the north side thereof, abutting and adjacent to the property line on said side of said street; that immediately south of said sidewalk, at the point of said alleged injury, and abutting the south side of said sidewalk at said point, was a tree plot or grass plot about six feet in width, and extending westerly along the south side of said sidewalk from Maple street; that, at and prior to the time of the injury alleged by plaintiff, said city, in accordance with plans and specifications duly adopted, had improved Maple street at the point where the injury occurred, and, in accordance with said plans and specifications, had

constructed a brick sidewalk six feet wide along the west side of Maple street at said point, which sidewalk abutted and was adjacent to the property line of the property owners along the west side of Maple street, and intersected said north sidewalk on Sixth street at the point where plaintiff was injured; that the stakes mentioned in plaintiff's complaint as obstructions were situated in said tree plot; that one of said stakes was set in the tree plot near the corner of the intersection of said sidewalks; that others were set in said tree plot along the south side of said north sidewalk along Sixth street, and along the west side of said west walk along Maple street; that a wire was attached to the top of each and connected all of said stakes, and was so arranged as a protection for said tree plot, and to prevent pedestrians from crossing over and trespassing on the same * * *; that in laying out said streets said tree plot had been estblished for the purpose of beautifying said street, and was not intended to be used by pedestrians for travel, and that the same was shown by the plans and specifications adopted by the common council, and that said improvements had been made and maintained, in the manner set forth in said plans and specifications, for a number of years prior to the time of the injury.''

In ruling upon the demurrer to the foregoing, the court said:

''Grass plots are ornaments; and shade trees along the sidewalk give protection from the heat in summer. While they may be obstructions, yet, when ample width is left to answer the demands of travel, they are such obstructions as serve a useful purpose, and are not inconsistent with the object for which streets are made and maintained. Like a fence, a hydrant, a hitching post, telephone or telegraph poles, they are lawful obstructions. * * * It is not negligence *per se* to maintain them. It is the duty of a municipal corporation to use reasonable care to keep its streets in a safe condition; it has a right to devote the sides thereof to other useful purposes, *provided it leaves an unob-*

*structed way* of ample width for pedestrians. If the city is liable in the case at bar, it is because it permitted a condition to exist which constituted a dangerous obstruction of a public highway.''

A leading case relating to the right to compensation of abutting owners by additional servitude on public streets is the early case of *Willamette Iron Works v. Oregon Railway & Navigation Co.,* 26 Or. 224 (37 P. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88). The legislative assembly of 1887 granted to the defendant in that case the right to construct and maintain a bridge, with proper and convenient approaches, across the Willamette river between the then cities of Portland and East Portland, for the purpose of travel and commerce as a railroad, wagon road, and passenger bridge, and to charge and collect tolls thereon. Subsequently, the city of Portland granted to the defendant the right to build on Third street a solid roadway and approach to that bridge. The plaintiff sought injunctive relief, which was granted by the trial court. The defendant sought a reversal of the decree, on the ground, first, that the erection of the bridge and its approach to Third street under legislative authority violated no property rights of plaintiff and that consequently it was without remedy notwithstanding its property might have been injured; and, second, that the plaintiff's remedy, if any, was by an action at law to recover damages, and not by a suit for an injunction. In determining the issue, Mr. Chief Justice BEAN, the eminent jurist who delivered the opinion for the court, said:

''But few questions have come before the courts in recent years involving larger pecuniary interests or of greater practical importance, or which have provoked more discussion, than those growing out of the enforcement by abutting lot owners of their right to compensa-

tion for the occupation and use of streets under legislative or municipal authority by private corporations for public use, under constitutions like ours, which provide that private property shall not be taken for public use without just compensation. It is quite generally agreed that any proper exercise of governmental power over a street in a municipality, for street purposes, which does not directly encroach upon the abutting property of an individual, though the consequences may be to impair its use, is not a taking within the meaning of the Constitution, and will not entitle the adjoining proprietor to compensation, or give him a right of action: Cooley on Constitutional Limitations (5th Ed.) 671; *Transportation Co. v. Chicago,* 99 U. S. 635 [25 L. Ed. 336]. It is within this principle that changes of grade; the use of a street for a surface street railroad; the erection of lamps, hitching posts, telephone, telegraph, and electric light poles; the laying of sewer and water pipes; the crossing of streets over railway tracks by means of elevated viaducts, are, when authorized by lawful authority, held *damnum absque injuria,* although the abutting owner may be seriously injured, and the value and usefulness of his property greatly impaired. This is upon the ground that individual interests in streets are subservient to those of the public, and that an adjoining owner received full compensation for such injury as might result to him or his grantees from the use of the street for proper street purposes at the time of the dedication or appropriation of the land therefor. *But there is a limitation to legislative or municipal power over a street, which cannot be exceeded without invading the constitutional rights of abutting owners.* An abutting proprietor is entitled to the use of the street in front of his premises to its full width as a means of ingress and egress, and for light and air, and this right is as much property as the soil within the boundaries of his lot; and therefore any impairment thereof, or interference therewith, caused by the use of the street for other than legitimate street purposes, is a taking within the meaning of the Constitution, whether the fee of the street is in the abutting owner or not. He holds

his property subject to the power of the proper legislative authority to control and regulate the use of the street as an open public highway, and hence any authorized use thereof, though a new one, gives him no cause of action. But such holding is not subject to the legislative power to divert the street from legitimate street purposes by authorizing a structure thereon which is inconsistent with its continuous use as an open public street. *Any structure on a street which is subversive of and repugnant to its use and efficiency as a public thoroughfare is not a legitimate street use, and imposes a new servitude on the rights of abutting owners, for which compensation must be made:* Elliott on Roads and Streets, 526; Tiedeman on Municipal Corporations, 301; Lewis on Eminent Domain, § 126; * * * 2 Dillon on Municipal Corporations, § 711 [and many other authorities].''

In *Sandstrom v. Oregon-Washington Ry. & Nav. Co.,* 75 Or. 159 (146 P. 803), this court speaking through Mr. Justice BURNETT, held that the plaintiff, whose property fronted on a dedicated street, and whose access thereto was cut off by defendant's railroad excavation half a block away so that, though he had an approach from the west he had none from the east, suffered an injury not common to the general public but peculiar to himself, entitling him to an action for damages. That opinion holds that the plaintiff, having acquired the property with reference to the dedicated streets as appeared on the plat, was entitled to the use of those streets as an appurtenance to his premises. The learned jurist further said:

''In common with the general public residing in other parts of the city or state, he had a right to travel along Newark street without let or hindrance. For the invasion of the mere right to travel, as thus far stated, he is barred from recovery by the municipal legislation mentioned; but, as he passed along the street with

other members of the general public, he had a privilege which no other person possessed, to wit, that of entering upon his close from that street, and prior to the construction of the road, in the exercise of his prerogative, he could approach his premises from the east as well as from the west. The defendant is in the position of saying to him, in substance:

" 'Although you had the right, before we came upon the ground, to go to your residence both from the east and from the west along Newark street, yet, in our judgment, it is enough for you if you can reach it from the west, and we will therefore appropriate your eastern approach for ourselves.'

"This is a palpable invasion of the plaintiff's right of access to and egress from his premises. If it is sound in principle to allow this without compensation in damages, the company could as well take from him both approaches."

In support of this view, a multitude of authorities are cited.

In the case of *Lowell et al. v. Pendleton Auto Co.,* 123 Or. 383 (261 P. 415), this court held that the owner of property abutting upon a street is entitled to have the street kept open and continued as a public street for the benefit of his abutting property, and, in support of such declaration, quoted the following from 3 McQuillin, Municipal Corporations, § 1322, where the author enumerates the rights of such owner as follows:

"(1) The right of access, often referred to as that of ingress and egress; (2) the right of light and air; (3) the right of view; (4) the right to have the street kept open and continued as a public street for the benefit of their abutting property; and (5), as stated in a recent New York decision, whatever adds to the value of the street to the abutter."

The question was again at issue in the more recent case of *Cove Lodge v. Harris*, 134 Or. 566 (294 P. 355), where this court approved the following from *Lowell v. Pendleton Auto Co.*, supra:

"It is well established that, while additional uses may be imposed upon a street not submersive of or impairing the original street, such as subjecting a street to new modes of travel, or laying down gas or water mains; yet the rights of the public to use it as a street and of the adjacent lot owner to enjoy it as a means of ingress to and egress from his property cannot be materially impaired."

One of the cases relied upon by the defendant is the case of *Barrett v. Union Bridge Co.*, 117 Or. 220 (243 P. 93, 45 A. L. R. 521). That case is not controlling here. It involved the improvement of a public highway, whereas, as we have already stated, the instant case is based upon the alleged injury to the property of plaintiffs arising out of the construction of a nuisance in a public highway. In the Barrett case the court held that a bridge approach placed upon a public street is not an additional servitude upon the street so as to require compensation to the abutting owner. The opinion cites as authority, and follows the holding of this court in, *Brand v. Multnomah County*, 38 Or. 79 (60 P. 390, 62 P. 209, 50 L. R. A. 389, 84 Am. St. Rep. 772), to the effect that the right of an abutting owner to access between his property and the street is property within the rule that compensation must be made for encroachment thereon by a private individual, but that such right of access is subject to the right of the public.

■■ Where a city, in grading a street, exercises care and skill in performing the work, and does not invade abutting property, any injury resulting therefrom to

such property is *damnum absque injuria*. To grade a street or alley already dedicated to public use is not an exercise of the eminent domain so as to require compensation. It is not a new or an additional appropriation of private property to a public use, but an exercise of authority over what is already public property: *Davis v. Silverton,* 47 Or. 171 (82 P. 16).

The alleged damages sustained by plaintiffs' property do not result from an invasion, nor from wilful negligence, nor from an actual taking of their property; but the plaintiffs allege facts—and support their averments with proof—that tend to show that the city has torn up pavements and reconstructed certain streets in a manner that affects the use and value of their property by shutting off access thereto from Grover street, which has the effect of altering the nature of their corner lot, valuable for business purposes, to an inside lot, and is a taking within the meaning of the Constitution: 2 Cooley's Constitutional Limitations (8th Ed.), 1175; Skelton, Boundaries and Adjacent Properties, § 389, "Uses Which Are Diversions."

In 5 McQuillin, Municipal Corporations (2d Ed.), at section 2115, it is said:

"Apart from imposition by written law, or by negligence, want of skill, or active wrongdoing, no municipal liability arises for consequential damages resulting from the construction of public improvements, including the construction of streets, and sewers. Where there has been an actual taking or damaging of property, liability arises without regard to the exercise of reasonable care in the doing of the work.

"In accordance with this general doctrine, it is well settled that a municipal corporation is not liable for consequential injuries to property *resulting from a public improvement duly authorized and constructed in*

*pursuance of legal provisions,* without negligence or want of skill, unless such liability is imposed by constitution, or statute, or charter, as consequential damages to lots contiguous to a street or sidewalk which has been graded in a careful manner, or in the authorized change of the grade of a street, or in paving and curbing streets, or in establishing a grade for a street, and adopting plans for its improvement  *  *  *.''

■■ The plaintiffs in this cause do not contend that their corner lot has been injured by the construction of a lawful public improvement. The testimony shows beyond peradventure that the value of the lot was greatly reduced by the tearing up by the defendant of the sidewalk along the Grover street side, a distance of 100 feet, and the property was further injured by the destroying of the pavement on Grover street as alleged and the construction of a barrier across that street, thus closing it to travel at this point. The street was neither vacated nor abandoned as a highway; but it was obstructed as a passageway for travel.

Now, recurring to the instructions given by the court, and to others refused: The court did not err in refusing to give the plaintiffs' requested instruction that the only question for the jury to determine was the question as to whether the plaintiffs had suffered any damage by the tearing up of the street and sidewalk. Nor do we believe that the court committed substantial error by giving abstract instructions. In general, the instructions constitute a fair and informative statement of the law applicable to the question at issue. The skillful attorneys representing the defendant seem to have overlooked the right of the abutting owner to have the street kept open and continued as a public highway: *Lowell v. Pendleton Auto Co.*, supra, and authorities above cited. However, the charge to

the jury that, if the city council adopted "the plan of this street arrangement as the same has been substantially carried out you will not allow any damage to the plaintiffs" as a result thereof even though it partially shuts off access to the property of plaintiffs from the Grover street side, if it left them a convenient access to their property another way, constitutes error. Manifestly, the city could not deprive the plaintiffs of their rights as abutting owners on Grover street by the construction of a nuisance thereon, and compensate them in full for that injury by reminding them that they yet owned their abutter's rights on Corbett street: *Sandstrom v. Oregon-Washington Ry. & Nav. Co.,* supra. By this instruction, the court committed substantial error. It follows that this cause is reversed and remanded.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.