No. 58          December 31, 2015          501

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
acting by and through its
Department of Transportation,
*Respondent on Review,*

*v.*

ALDERWOODS (OREGON), INC.,
an Oregon corporation,
successor by merger with
Young's Funeral Home, Inc.,
an Oregon corporation,
*Petitioner on Review,*
*and*

BANK OF AMERICA, N. A.,
a national association,
as administrative agent,
*Defendant.*

(CC C085449CV; CA A146317; SC S062766)

En Banc

On review from the Court of Appeals.*

Argued and submitted June 16, 2015.

Charles F. Hudson, Lane Powell PC, Portland, argued the cause and filed the brief for petitioner on review. With him on the brief was Thomas W. Sondag.

Denise J. Fjordbeck, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Jordan R. Silk, Schwabe, Williamson & Wyatt, P.S., Portland, filed the brief for *amici curiae* Central Oregon Builders Association, Oregonians In Action, and Owners' Counsel of America.

_____
    * Appeal from Washington County Circuit Court, Thomas W. Kohl, Judge. 265 Or App 572, 336 P3d 1047 (2014)

Brian T. Hodges, Pacific Legal Foundation, Bellevue, Washington, filed the brief for *amici curiae* Pacific Legal Foundation and National Federation of Independent Business Small Business Legal Center.

Denis M. Vannier, Deputy City Attorney, Portland, filed the brief for *amicus curiae* League of Oregon Cities.

BALDWIN, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

## BALDWIN, J.

As part of a highway improvement project, plaintiff, Oregon Department of Transportation (ODOT or the state), brought this condemnation action against defendant, Alderwoods (Oregon), Inc., seeking to acquire "[a]ll abutter's rights of access, if any," between defendant's property and Highway 99W. The improvement project involved rebuilding the sidewalk along Highway 99W and eliminating two driveways that previously had allowed direct vehicular access from defendant's property to the highway. Defendant's property retained access to the highway, however, by means of two driveways onto a city street that runs perpendicular to and intersects the highway. Before trial, the state moved *in limine* to exclude as irrelevant evidence of any diminution in value of defendant's property as a result of the loss of the two driveways. The trial court concluded that the elimination of those driveways had not effected a taking of defendant's right of access to the highway and granted the state's motion. The Court of Appeals, in an equally divided *en banc* opinion, affirmed.

We allowed review to determine whether the state's interference with a property owner's right of access to an abutting state highway constitutes a taking for which the owner is entitled to compensation when the owner retains reasonable access to the highway via another abutting road. We answer that question "no" and, for the reasons that follow, affirm the decision of the Court of Appeals.

## I.   BACKGROUND

Defendant owns a rectangular parcel of property near the interchange of Highway 99W and Highway 217 in Tigard. The southern boundary of defendant's property abuts Highway 99W. The western boundary of defendant's property abuts Warner Avenue, a public road that intersects Highway 99W at the southwest corner of defendant's property. Before ODOT's improvement project, Highway 99W had been accessible from defendant's property at four points: two driveways onto Highway 99W, and two driveways onto Warner Avenue, near the intersection with Highway 99W. ODOT later initiated a project to improve Highway 99W

that involved, among other things, rebuilding the sidewalk along Highway 99W and eliminating the two driveways that had allowed direct vehicular access to the highway from defendant's property. The project left intact the two driveways onto Warner Avenue.

The following is a diagram of the relevant intersection:



As part of its highway improvement project, the state brought this condemnation action against defendant to acquire a temporary construction easement across a portion of defendant's property for the purpose of reconstructing the sidewalk and to acquire any right of access that defendant might have to Highway 99W. A month later, ODOT sent defendant a notice of removal of defendant's approaches to Highway 99W. The letter informed defendant that ODOT had no record of a permit for defendant's driveways, and that defendant could either apply for a permit or could provide proof that the existing approaches had been established before 1949. *See* OAR 734-051-0040(26) (2008) (defining "grandfathered approach," for purposes of exemption from ODOT's permitting system, as any legally constructed approach that existed before 1949).

The entire length of defendant's property that abuts Highway 99W is less than 750 feet from the interchange of

Highway 99W and Highway 217, and, under ODOT's minimum safety standards, an approach to a highway must be located at least 750 feet from any highway interchange, OAR 734-051-0125 (2008) (Table 5). No approach to Highway 99W therefore would have been permitted from defendant's property. In any event, defendant did not respond to ODOT's notice, and ODOT reconstructed the sidewalk abutting defendant's property without the driveways that previously had allowed direct vehicular access from the property to Highway 99W.

Before trial in the condemnation action, the state filed a motion *in limine* seeking to exclude as irrelevant any evidence of the diminished value of defendant's property as a result of the elimination of the two driveways onto Highway 99W. The state argued that its restriction of defendant's access to the highway did not constitute a compensable taking under Article I, section 18, of the Oregon Constitution, because the restriction was intended to promote the efficient and safe use of the highway and because defendant's property retained indirect access to the highway via Warner Avenue. The trial court agreed and granted the state's motion. The parties later stipulated that defendant was entitled to an award of $11,792 as just compensation for the temporary construction easement over defendant's land. The stipulation stated that that amount did "not include any compensation for the taking of any abutting rights of access claimed by defendant, the court having granted plaintiff's motion to exclude all evidence of such taking." The trial court thereafter entered judgment, and defendant appealed, assigning error to the order granting the state's motion *in limine*.

The Court of Appeals affirmed by an equally divided court. *ODOT v. Alderwoods (Oregon), Inc.*, 265 Or App 572, 336 P3d 1047 (2014). In a concurring opinion in which four judges joined, Judge Armstrong held that the trial court had not erred in granting the state's motion *in limine*. *Id.* at 574 (Armstrong, J., concurring). After reviewing Oregon cases on the common-law right of access to an abutting road, the Armstrong concurrence noted that a denial of that right may constitute a compensable taking under Article I, section 18, of the Oregon Constitution. *Id.* at 576. Nevertheless, the concurrence observed that "it is well established in Oregon that

governmental regulation or modification of a road for road purposes that denies a landowner access to the road does *not* give rise to a compensable taking of the owner's access right." *Id.* at 577 (emphasis in original; citing *Oregon Investment Co. v. Schrunk*, 242 Or 63, 408 P2d 89 (1965); *Barrett et al. v. Union Bridge Co.*, 117 Or 220, 243 P 93, *reh'g den*, 117 Or 566, 245 P 308 (1926); *Brand v. Multnomah County*, 38 Or 79, 60 P 390, *aff'd on reh'g*, 38 Or 79, 62 P 209 (1900)).

The Armstrong concurrence concluded that one decision of this court could not be reconciled with the above principles:

"Notwithstanding those decisions holding that a complete loss of access to a road is not a compensable taking of access when the loss is caused by the regulation or modification of the road for road purposes, the Supreme Court concluded in *dictum* in *State Highway Com. v. Burk et al.*, 200 Or 211, 265 P2d 783 (1954), that the conversion of a conventional highway to a limited-access highway, with the concomitant loss of access to the highway by abutting landowners, requires the government to condemn the access rights of the abutting landowners, because denying the owners access to the highway would constitute a compensable taking of their access right."

*Alderwoods*, 265 Or App at 578. In the concurrence's view, the *dictum* in *Burk* could not be squared with the analysis that applies to governmental regulations that affect land, under which a regulation does not constitute a taking unless it leaves the landowner with no economically viable use of the land. *Id.* at 579-80.

Ultimately, the Armstrong concurrence concluded that *Schrunk*, *Barrett*, and *Brand* established the binding constitutional principle in cases involving abutting rights of access—*i.e.*, that a denial of access for abutting landowners to an existing road to promote the efficient and safe use of the road is not a taking under Article I, section 18. *Id.* at 582. Applying that principle to this case, the concurrence concluded that a taking had not occurred. *Id.* at 582-83. Rather,

"as a result of ODOT's regulatory decision to eliminate the curb cuts and driveways to Highway 99W, which resulted

in a loss of access to Highway 99W for which compensation is *not* owed, *see, e.g.*, *Schrunk*, 242 Or at 71, defendant's property does *not* have access to Highway 99W irrespective of whether the state condemned the access. Hence, defendant was not entitled to recover damages measured by a loss of access *that it does not have*. It follows that the trial court did not err in excluding evidence relevant to *that* measure of damages."

*Alderwoods*, 265 Or App at 582-83 (emphases in original).

In a separate concurring opinion, Judge Sercombe concluded that a compensable taking of defendant's right of access to Highway 99W had not occurred, because defendant did not have a property interest in specific, direct access to the highway that the state could have acquired. *Id.* at 584 (Sercombe, J., concurring). Judge Sercombe explained that "the only property interest in street access held by an abutter at common law is a general, unfixed, right to access the street. \* \* \* Unless a government takes that entire interest—both the direct and indirect access—no compensation is owed under Article I, section 18." *Id.* at 587.

For similar reasons, Judge Sercombe also concluded that defendant was not entitled to compensation under ORS 374.035—the statute that grants ODOT the authority to exercise the power of eminent domain to acquire interests in real property necessary to establish a throughway.[1] *Id.* at 589-90. Because the state had not sought to deprive defendant of all access to the highway—that is, both the direct access from defendant's property frontage and indirect access from Warner Avenue—Judge Sercombe concluded that the statutory requirement that the state provide just compensation to acquire defendant's right of access did not apply. *Id.* at 589-90.

---

[1]  ORS 374.035 provides, in part:

"(1) The Department of Transportation may, in the name of the state, acquire by agreement, donation or exercise of the power of eminent domain, fee title to or any interest in any real property, including easements of air, view, light and access, which in the opinion or judgment of the department is deemed necessary for the construction of any throughway, the establishment of any section of an existing state road or highway as a throughway or the construction of a service road."

In a dissenting opinion in which five judges joined, Judge Wollheim concluded that the trial court had erred in ruling that defendant was not entitled to adduce evidence of damages resulting from the loss of direct access to Highway 99W. *Id.* at 592 (Wollheim, J., dissenting). In contrast to Judge Sercombe, the dissent described the common-law right of access to an abutting road as a right of direct access. *Id.* at 596. Accordingly, the dissent concluded that, when the state deprives a landowner of direct access to an abutting public road, the owner has a statutory entitlement to adduce evidence of damages resulting from the loss of that right. *Id.* at 598-99 (citing ORS 374.035 (providing that state may acquire access rights by exercise of power of eminent domain for purposes of constructing throughway); ORS 374.055 (requiring that landowner be permitted to adduce evidence of "[a]ll damages by reason of deprivation of right of access")).

## II.   ANALYSIS

On review, defendant relies on Article I, section 18, and various provisions of ORS Chapter 374 to argue that it is entitled to just compensation for the diminished value of its property caused by the state's elimination of the two driveways onto Highway 99W. Defendant contends that an owner of property abutting a public road holds an easement of direct access to the abutting road that may not be extinguished without just compensation. In defendant's view, any interference with a property owner's ability to access a public road constitutes a taking. To the extent that some indirect access remains, defendant argues that the adequacy of that remaining access goes to the amount of compensation owed, rather than to the initial determination of whether a compensable taking occurred.[2]

---

[2] On review, defendant also challenges the Armstrong concurrence's conclusion that, as a result of ODOT's regulatory decision to remove defendant's unpermitted approaches to Highway 99W, "defendant's property does not have access to Highway 99W irrespective of whether the state condemned the access." *ODOT v. Alderwoods (Oregon), Inc.*, 265 Or App 572, 582-83, 336 P3d 1047 (2014) (emphasis omitted). The state concedes, however, that defendant's approaches to Highway 99W existed before 1949 and therefore were not subject to cancellation for lack of a permit. *See* OAR 734-051-0040(26) (2008) (grandfathering into ODOT's permit system any legally constructed approach that existed before 1949). The state further concedes that ODOT issued its letter notifying defendant

The state does not dispute that a landowner possesses some right of access to an abutting public road. However, the state describes that right of access as a qualified right and contends that an abutting landowner is not entitled to compensation when access is closed for a legitimate highway purpose and the property remains otherwise accessible. In the state's view, "[w]here the state closes particular access points for safety reasons while other points of access remain readily available, the state has not taken anything belonging to the property owner and so no compensation is owed."

A.   *Article I, Section 18*

Article I, section 18, of the Oregon Constitution provides, in part: "Private property shall not be taken for public use *** without just compensation." "A 'taking' of property is a shorthand description for an exercise of the government's power of eminent domain, which is the power of the sovereign to take property for 'public use' without the property owner's consent." *Hall v. Dept. of Transportation*, 355 Or 503, 510, 326 P3d 1165 (2014). Article I, section 18, limits the state's eminent domain power by requiring the state to pay for the appropriation of vested property rights. *Dunn v. City of Milwaukie*, 355 Or 339, 346-47, 328 P3d 1261 (2014). What constitutes a property interest that qualifies for protection under Article I, section 18, is defined by Oregon common law. *See Phillips v. Washington Legal Foundation*, 524 US 156, 164, 118 S Ct 1925, 141 L Ed 2d 174 (1998) ("Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law.") (internal quotation marks omitted); *DeMendoza v.*

_____

of the removal of its unpermitted approaches after it had filed the condemnation complaint. As defendant points out, the property sought to be taken in this condemnation action is valued as of the time that the state filed its complaint. *See Dept. of Trans. v. Lundberg*, 312 Or 568, 574 n 6, 825 P2d 641, *cert den*, 506 US 975 (1992) ("Valuation of property is measured as of the date the condemnation action is commenced or the date the condemnor enters on and appropriates the property, whichever first occurs."). Thus, if any compensation was due, it was due at the time defendant's condemnation action was filed, and ODOT's subsequent administrative actions are irrelevant. In any event, as we will explain, we determine that no taking of defendant's right of access occurred in this case.

*Huffman*, 334 Or 425, 450-51, 51 P3d 1232 (2002) (no property interest "taken" for purposes of Article I, section 18, because Oregon law did not recognize property interest in punitive damages award before judgment). Thus, before we address whether the state's actions in this case constituted a taking of defendant's right of access to the abutting highway under Article I, section 18, we first determine whether Oregon property owners have a property right in a common-law right of access to public roads, and, if so, the nature and scope of that right.[3]

### 1. *Common-law right of access*

Courts and legal scholars have struggled to identify the precise origin of the common-law right of access held by a property owner whose land abuts a public road. As the California Supreme Court once noted, the "origin of that property right is somewhat obscure but it may be said generally to have arisen by court decisions declaring that such right existed and recognizing it." *Bacich v. Board of Control of California*, 23 Cal 2d 343, 350, 144 P2d 818, 823 (1943). In particular, courts and scholars have attributed the emergence of those access rights to the so-called "New York elevated railway cases"—*Story v. New York Elevated R. R.*, 90 NY 122 (1882), and *Lahr v. Metropolitan Elevated Ry.*, 104 NY 268, 10 NE 528 (1887). The United States Supreme Court summarized the holdings of those cases as follows:

> "The *New York Elevated Railway cases* *** hold that the construction and maintenance on the street of an elevated railroad operated by steam, and which was not open to the public for purposes of travel and traffic, was a perversion of the street from street uses, and imposed upon it an additional servitude, which entitled abutting owners to damages.

---

[3] Ordinarily, if statutory sources of law provide a complete answer to the legal question before us, we will decide the case on that basis, rather than turning to constitutional provisions. *Rico-Villalobos v. Guisto*, 339 Or 197, 205, 118 P3d 246 (2005). As we explain below, however, the statute at issue in this case does not provide an adequate basis for decision, because that statute does not grant landowners any substantive rights beyond those protected by Article I, section 18. We therefore begin our analysis by addressing defendant's claim under Article I, section 18.

"* * * * *

"* * * It is clear that under the law of New York an owner of land abutting on the street has easements of access, light and air as against the erection of an elevated roadway by or for a private corporation for its own exclusive purposes, but that he has no such easements as against the public use of the streets or any structures which may be erected upon the street to subserve and promote that public use."

*Sauer v. New York*, 206 US 536, 545, 547-48, 27 S Ct 686, 51 L Ed 1176 (1907) (internal quotation marks omitted).[4]

Consistently with those cases, Oregon case law has established that an owner of property abutting a public road has a common-law right of access to its premises by means of the abutting road. *See, e.g.*, *Schrunk*, 242 Or at 69 (abutting proprietor's right to use public road as means of ingress and egress is a property right); *Burk*, 200 Or at 228 (same); *Sweet et al. v. Irrigation Canal Co.*, 198 Or 166, 190-91, 254 P2d 700, *reh'g den*, 198 Or 166, 256 P2d 252 (1953) (abutting property owner has right of access that "is as much property as the soil within the boundaries of his lot"); *Barrett*, 117 Or at 223 (it is "unquestioned" that abutting property owner has right of access to and from his property by way of public road); *Iron Works v. O. R. & N. Co.*, 26 Or 224, 228-29, 37 P 1016 (1894) (abutting property owner has right of access that may not be taken without payment of just compensation).[5]

The nature of an abutting landowner's common-law right of access has been described as an easement appurtenant to the abutting land. *See, e.g.*, *Burk*, 200 Or at 228 (so describing an abutting owner's right of access); *see also Barrett*, 117 Or at 223 ("Streets are established to afford

---

[4] It is perhaps worth noting, however, that the development of a common-law right of access was far from inevitable. As Justice Holmes once observed, "If at the outset the New York courts had decided that apart from statute or express grant the abutters on a street had only the rights of the public and no private easement of any kind, it would have been in no way amazing." *Muhlker v. Harlem Railroad Co.*, 197 US 544, 572-73, 25 S Ct 522, 49 L Ed 872 (1905) (Holmes, J., dissenting).

[5] In 1951, the legislature altered that common-law right by proscribing the accrual of any abutting rights of access to state highways "constructed, relocated or reconstructed after May 12, 1951." ORS 374.405. The state has not argued, however, that Highway 99W was constructed after that date or that ORS 374.405 applies to this case.

access, light and air to the property through which they pass, and the right of access, light and air is appurtenant to the property adjacent to the street, and is a part and parcel of it."); 2 *Nichols on Eminent Domain* § 5.07[2][c][i], 5-349 (3d ed 2015) ("An owner of land abutting on a street has a right of access to that street, but does not own the fee of the street. The owner is in possession of easements of light and air over the street, as well as easements of view and access." (Footnotes omitted.)).

Although Oregon case law has not elaborated on the characteristics of such easements of access, an easement is generally "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." *Black's Law Dictionary* 622 (10th ed 2014); *see also Restatement (Third) of Property: Servitudes* § 1.2 comment d (2000) ("The benefit of an easement *** is considered a nonpossessory interest in land because it generally authorizes limited uses of the burdened property for a particular purpose. The holder of the easement *** is entitled to make only the uses reasonably necessary for the specified purpose."). More specifically, an easement appurtenant is "[a]n easement created to benefit another tract of land, the use of [the] easement being incident to the ownership of that other tract." *Black's* at 622; *see also Restatement* § 1.5(1) ("'Appurtenant' means that the rights or obligations of a servitude are tied to ownership or occupancy of a particular unit or parcel of land. The right to enjoyment of an easement *** that can be held only by the owner or occupier of a particular unit or parcel, is an appurtenant benefit.").

Applying those principles to an abutting property owner's right of access, such an easement may be properly understood to be an interest in land for the benefit of the abutting landowner and for the specific, limited purpose of providing access to and from the abutting public road. The property owner holds that right of access as an incident of owning the abutting property, and the right passes to any grantee of the property. 3 *Tiffany Real Property* § 927, 608 (3d ed 1939); *see Holland et al v. Grant County et al*, 208 Or 50, 54, 298 P2d 832 (1956) (abutters' rights of access "arise

by reason of their ownership of the real property abutting thereon"); *Burk*, 200 Or at 228 ("When a conventional highway is established, there is attached to the abutting land an easement of access in, and to, the highway."); *Restatement* § 5.2 (appurtenant benefit runs to all subsequent owners and possessors of the benefited property); 3 *Nichols on Eminent Domain* § 10.03[5][b] at 10-71 ("The abutters' easements, when recognized by the jurisdiction's substantive law, follow the fee of the land to which they are appurtenant as the shadow follows the substance and cannot be separated therefrom.").

Whether state action that interferes with such a right of access constitutes an unconstitutional taking for which just compensation is due has proved a more difficult question. As early as 1907, the United States Supreme Court observed that "[t]he right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all the States, and the decisions have been conflicting, and often in the same State irreconcilable in principle." *Sauer*, 206 US at 548. Nevertheless, the contours of the right of access have emerged in the context of cases factually akin to this one, in which a governmental action interfered with a landowner's right of access to an abutting road and the question was whether the governmental interference constituted a taking. Those cases establish that an abutting owner's right of access is not an absolute right. Rather, the right of access held by a property owner is a qualified right, subject to the public's right to use and improve public roads.

In two early cases, this court held that changing the grade of a public road did not constitute a taking within the meaning of Article I, section 18, even though an abutting owner's right of access had been impaired as a result. *Barrett*, 117 Or at 223-25 (construction and maintenance of approach to bridge on public road did not constitute taking under state or federal constitution); *Brand*, 38 Or at 100-02 (mere change in street grade, lawfully accomplished, "does not entitle the abutters to compensation for any inconvenience that may be entailed thereby"). The court in *Brand* explained that,

"'so long as there is no application of the street to pur-
poses other than those of a highway, any establishment or
change of grade made lawfully, and not negligently per-
formed, does not impose an additional servitude upon the
street, and hence is not within the constitutional inhibition
against taking private property without compensation, and
is not the basis for an action for damages, unless there be
an express statute to that effect.'"

*Brand*, 38 Or at 100 (quoting *Willis v. Winona City*, 59 Minn
27, 33-34, 60 NW 814, 815 (1894)); *Barrett*, 117 Or at 225
(same); *see also Iron Works*, 26 Or at 228 (noting that abutting
owner "holds his property subject to the power of the proper
legislative authority to control and regulate the use of the
street as an open public highway, and hence any authorized
use thereof, though a new one, gives him no cause of action").

        Several decades later, in *Schrunk*, this court reaf-
firmed the principle that an abutting owner's right of access
is subject to the government's interest in regulating the
safe and efficient use of public thoroughfares. In that case,
a city had prohibited direct vehicular access to the plain-
tiffs' parking lot from a particular street, which the city
had designated as a 24-hour bus loading zone. 242 Or at
65-67. This court noted that "'[t]he rights of abutting pro-
prietors to access to their premises are subservient to the
primary rights of the public to the free use of the streets
for the purposes of travel and incidental purposes.'" *Id.* at
69 (quoting *Hickey v. Riley*, 177 Or 321, 332, 162 P2d 371
(1945)). Pointing to *Barrett* and *Brand* as examples, the
court observed that "[t]he interference with the abutting
owners' rights of access, held in these cases not to be a 'tak-
ing,' was incidental to the carrying out of a legitimate public
purpose." *Id.* Applying that principle to the facts of the case,
the court determined that the city's concern in refusing to
allow a curb cut on the street at issue was "with the public
safety and convenience—with the safety in a heavily con-
gested area of pedestrians, including persons boarding and
departing from buses, and the safe and orderly movement of
automobile traffic." *Id.* at 71. Because those were "legitimate
public aims," and because the plaintiffs retained access
from their property to other abutting streets, the court
concluded that there had been no taking within the mean-
ing of Article I, section 18. *Id.*

In contrast to those cases, this court has held that a governmental interference with an abutting owner's right of access for "other than legitimate highway purposes" does constitute a taking. For instance, in *Sweet*, a private company maintained an irrigation ditch in a county road that interfered with the abutting landowners' right of ingress and egress to and from their land. 198 Or at 170. This court concluded that the maintenance of an open ditch along a public highway was a public nuisance and could not be justified as a public use for purposes of Article I, section 18. *Id.* at 191-92. Rather, "any impairment of [an abutting owner's right of access to the highway] or interference with it caused by the use of the highway for other than legitimate highway purposes is a taking within the meaning of the constitution." *Id.* at 191.

Similarly, in *Ail et ux. v. City of Portland*, 136 Or 654, 299 P 306 (1931), a city had removed a sidewalk and planted a strip of grass and shrubs between the street and the abutting landowners' property. *Id.* at 655. The court concluded that the strip of grass and shrubs constituted a nuisance that deprived the abutting property owners of access to the street and so was a taking. *Id.* at 666-68. The court explained that "[a]ny structure on a street which is subversive of and repugnant to its use and efficiency as a public thoroughfare is not a legitimate street use, and imposes a new servitude on the rights of abutting owners, for which compensation must be made." *Id.* at 663 (emphasis omitted); *see also Iron Works*, 26 Or at 230-31 (abutting landowner entitled to damages for loss of access following private corporation's alteration of street grade for construction of bridge approach, because deprivation of access was "an appropriation of a public street to the exclusive use of a private corporation"); *McQuaid v. Portland & V. R'y Co.*, 18 Or 237, 255-56, 22 P 899 (1889) (abutting owner could recover damages for impairment of access caused by construction of railway in city street, because such use of street was not for purpose of facilitating public travel).

This court's case law also firmly establishes that an abutting property owner's right of access does not ensure access at the most direct or convenient location. *See, e.g.*, *Holland*, 208 Or at 54 ("[A]n easement of access implies

a reasonable right of ingress and egress from and to the highway from the property, and not at all points along the highway."); *Sweet*, 198 Or at 201 ("An abutting owner * * * 'is not necessarily entitled as against the public to access to his land at all points and it is held that it is sufficient if he has free and convenient access to his land and improvements thereon even though not at all points where it abuts upon the highway.'") (quoting Byron K. Elliott & William F. Elliott, 2 *Roads and Streets* § 882, 1153 (4th ed 1926)); *Morris v. City of Salem et al.*, 179 Or 666, 673, 174 P2d 192 (1946) ("All that the plaintiff is entitled to beyond the rights which he shares with the public generally is the right of reasonable access to his property[.]"); *see also* [ODOT v. Hanson](#), 162 Or App 38, 44, 987 P2d 538 (1999), *rev den*, 330 Or 252 (2000) ("At common law, any property owner has a right of access to public thoroughfares. * * * But the right of access is specific to no particular location and, thus, is subject to regulation by the state without compensation as long as some reasonable access remains available.").

Applying that principle, this court has held that a property owner is not entitled to compensation any time that governmental action renders the owner's means of ingress and egress less convenient. In *Holland*, for example, the state built a new bridge and abandoned a portion of a state highway over the old bridge. 208 Or at 51. This court held that the landowners whose property abutted the abandoned portion of highway were not entitled to compensation, even though the state's action required them to access the highway at a different point. *Id.* at 54-55. The court reasoned that "[t]he plaintiffs have the same means of ingress and egress from the highway to their property as they have always enjoyed; they are simply required to travel a little further to reach these points." *Id.*; *see also Highway Com. v. Central Paving Co.*, 240 Or 71, 74-75, 399 P2d 1019 (1965) (where landowners' access to highway by means of grade crossing over railroad right-of-way was replaced by access to frontage road, the "inconvenience resulting from travelling a more circuitous route" was not a deprivation of an interest in land).

Significantly, in *Schrunk*, this court held that, when property abuts more than one public road, a deprivation of

the property owner's access to one but not all of the abutting roads does not effect a taking:

> "[W]here the property fronts on more than one street, access may be denied, under particular circumstances, at one of the streets if adequate means of access remain to the owner at the other street or streets. To us this seems a reasonable exercise of the power of the city to provide for the public safety, convenience and welfare under the conditions created by modern motorized traffic in a large city."

242 Or at 72-73.

The above cases demonstrate three governing principles regarding the common-law right of access of a property owner to an abutting public road. First, it is well established that a common-law right of access by property owners attaches to property as an interest in land. Specifically, an abutting property owner holds an easement of access, appurtenant to the abutting land, for the limited purpose of providing a means of ingress and egress to and from the owner's property by means of the abutting public road. Second, the right of access to an abutting road is limited in scope. An abutting property owner does not have an absolute right to access an abutting road at the most direct or convenient location. Rather, the owner has a qualified right that is subject to the government's interest in regulating the safe use of public thoroughfares. Third, the owner's right of access ensures only reasonable access to and from the owner's property by means of the abutting road. Those three principles, in combination, reduce to this central proposition: When governmental action interferes with an abutting landowner's right of access for the purpose of ensuring the safe use of a public road, and the abutting landowner retains reasonable access to its property, no compensable taking of the property owner's right of access occurs.

### 2. *Application*

With those principles in mind, we turn to the issue presented in this case—namely, whether the trial court erred in excluding, as irrelevant, evidence of the diminished value of defendant's property resulting from the elimination of the two driveways onto Highway 99W. This court reviews

determinations of relevancy for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999).

As discussed, as an owner of property that abuts Highway 99W, defendant holds an undifferentiated easement of access to Highway 99W—that is, defendant's access right is not specific to a particular location but rather entitles defendant to reasonable access to its property from the highway. *Schrunk*, 242 Or at 71; *Central Paving*, 240 Or at 74; *Holland*, 208 Or at 54. Defendant's right of access, moreover, is subject to the state's interest in protecting the safe use of its highways. *Schrunk*, 242 Or at 69; *Barrett*, 117 Or at 223-24; *Brand*, 38 Or at 100. In this case, the state removed the two driveways at issue as part of a highway improvement project designed to bring Highway 99W into compliance with ODOT's minimum safety standards. Defendant does not dispute that the state's purpose in eliminating the two driveways was to protect the safe use of Highway 99W. Thus, the only conclusion to be reached on this record is that the state's interference with defendant's right of access was undertaken for that purpose.[6]

The remaining question is whether defendant retained reasonable access to its property notwithstanding the elimination of the two driveways. Defendant contends that the reasonableness of an abutting property owner's remaining access is a question of fact to be determined in light of the highest and best use of the affected property. We disagree that that question is always one of fact.[7]

---

[6] We reserve the question of whether a property owner's right of access is subject to the state's interest in highways for purposes other than safety.

[7] We note that other jurisdictions have split on the issue whether an abutting landowner retains reasonable access is a question of law or fact. *See* Roland F. Chase, Annotation, *Abutting Owner's Right to Damages for Limitation of Access Caused by Conversion of Conventional Road into Limited-Access Highway*, 42 ALR 3d 13 (1972) ("In jurisdictions requiring that a limitation of access resulting from the conversion of a conventional street or highway into a limited-access facility must be unreasonable, substantial, or material in order to warrant compensation to the abutting landowner, there is considerable disagreement as to whether the issue of reasonableness, substantiality, or materiality is one of law for the court or one of fact for the jury." (Footnote omitted.)). *Compare People v. Ricciardi*, 23 Cal 2d 390, 402-03, 144 P2d 799, 805 (1943) (it is within province of trial court, not jury, to pass upon question whether landowners' right of access is substantially impaired; if so, extent of impairment is for jury to determine), *and State ex rel. Department of Highways v. Linnecke*, 86 Nev 257, 260, 468 P2d 8, 10 (1970) (determination

This court has at times decided the question of whether a compensable taking has occurred as a matter of law. Recently, this court addressed the issue in an inverse condemnation case, *Coast Range Conifers v. Board of Forestry*, 339 Or 136, 117 P3d 990 (2005). In that case, the plaintiff contended that its claim that a state wildlife regulation had effected a taking under the Fifth Amendment should have been submitted to a jury. *Id.* at 154. We disagreed, noting that *Penn Central Transp. Co. v. New York City*, 438 US 104, 98 S Ct 2646, 57 L Ed 2d 631 (1978)—a case in which the United States Supreme Court set out a balancing test to determine whether a governmental regulation is a taking—"makes clear that the question whether the undisputed historical facts establish that a challenged regulation effects a taking presents a question of law for the court." *Id.* at 155. Because the plaintiff did not argue that the historical facts were disputed, we held that it was proper to determine, as a matter of law, whether the regulation at issue had effected a taking. *Id.*

In the context of abutting rights of access, this court also has determined whether a compensable taking occurred as a matter of law. In *Schrunk*, this court determined as a matter of law that the property owners retained unimpaired access to other abutting streets and that the city therefore had not taken the owners' right of access within the meaning of Article I, section 18. 242 Or at 71 (noting that, although there might be some depreciation in value of owners' property or some lessening of owners' business profits, any such loss was *damnum absque injuria*). Likewise, in *Holland* and *Morris*, this court decided, as a matter of law, that the property owners' rights of access had not been taken, because reasonable access to the owners' property remained. *Holland*, 208 Or at 54-55 (where removal of bridge required landowner to travel approximately 3,000 additional feet, landowner's right of access not unreasonably impaired); *Morris*, 179 Or at 673 (installation

whether property owner's right of access has been substantially impaired must be reached as matter of law; extent of such impairment must be determined as matter of fact), *with Balog v. State*, 177 Neb 826, 837, 131 NW2d 402, 410 (1964) (whether right of access has been destroyed or substantially impaired is question of fact which must be determined on particular facts in each case).

of parking meter did not substantially interfere with owner's right of reasonable access to his property). Based on that case law, we conclude that we can determine as a matter of law whether the state's action constituted a taking of defendant's right of access. We save for another day the question of whether the reasonableness of remaining access could present a factual question under circumstances not present in this case, such as when reasonable minds could disagree about whether a property owner retains an adequate means of ingress and egress.[8]

Based on the undisputed facts of this record, we conclude that the removal of the driveways in this case did not constitute a taking. First, as noted, it is uncontested that the state acted in the exercise of its authority to promote the safe use of Highway 99W. Second, as described above, defendant owns a corner lot at the intersection of Highway 99W and Warner Avenue. Even after the state closed the two driveways on the southern boundary of defendant's property, defendant retained unimpaired access to its property by means of the two driveways on the western boundary, which connect defendant's property to Warner Avenue and then to Highway 99W. Indeed, to access the highway after ODOT's highway improvement project, one need only exit defendant's property using the driveway onto Warner Avenue and then travel a short distance to the intersection with Highway 99W. We conclude, as a matter of law, that such access is reasonable. *See, e.g.*, *Schrunk*, 242 Or at 72-73 (where property fronts on more than one road, access may be denied at one road if adequate means of access remain to landowner at another abutting road). Defendant did not

---

[8] In arguing that the issue of the reasonableness of remaining access is a question of fact, defendant relies on this court's statement in *Douglas County v. Briggs*, 286 Or 151, 593 P2d 1115 (1979), that "the questions of the highest and best use of particular property and whether its access to a public road for such use is adequate and reasonable or has been impaired are not questions of constitutional magnitude or of law but are questions of fact that relate to the question of value." *Id.* at 157. That statement, however, was *dictum* and not supported by any authority. Moreover, this court decided that case on statutory grounds and explicitly declined to reach the issue whether a taking under Article I, section 18, had occurred. *Id.* at 156. As we explain below, the court in *Briggs* applied an inappropriate methodology when it decided the case on purely statutory grounds. Thus, to the extent that the *dictum* in *Briggs* suggested that the constitutional question of whether a compensable taking of an easement of access has occurred is always a question of fact, we disavow it.

adduce facts from which a reasonable factfinder could conclude that, in this case, there was a material difference in the access to Highway 99W from the curb cuts or from Warner Avenue. Because ODOT eliminated the two driveways at issue for the purpose of maintaining the safe use of Highway 99W and because defendant retained reasonable access to Highway 99W via Warner Avenue, the elimination of the driveways did not constitute a taking of defendant's right of access under Article I, section 18.[9]

Defendant relies heavily, as did the Court of Appeals dissent, on this court's decision in *Burk* for the proposition that the state's actions in this case constituted a taking. *Burk*, however, is factually distinguishable from this case. In *Burk*, the state relocated a highway for the purpose of building a new non-access highway. 200 Or at 219-20. This court concluded that, because the landowners did not have any preexisting access to the new highway, no easement of access had been taken:

> "[T]he statutory provision authorizing compensation for rights of access carries with it no implication that an easement of access, which never existed before, is created by filing an action to condemn a non-access highway, and then, eo instanti, extinguished by the bringing of the same action. The constitution requires compensation for the taking of an easement only if there is an easement to take. If there was none, then the statute which authorizes compensation for such easements does not apply."

*Id.* at 229, 235.[10] This court thus held that no taking of a right of access occurs when a new non-access highway is established by condemnation. *Id.* at 235.

---

[9] We note that, of the three Court of Appeals opinions in this case, our reasoning most closely aligns with that of Judge Sercombe's concurring opinion, *Alderwoods*, 265 Or App at 584-92 (Sercombe, J., concurring). We disagree with the Court of Appeals dissent that, in the circumstances presented here, the property owner had an unqualified right of "direct access" to Highway 99W. *Id.* at 596 (Wollheim, J., dissenting). Rather, as discussed above, the common-law right of access is an undifferentiated easement of access, and, in the circumstances presented here, no taking occurred.

[10] The statute at issue in *Burk* was OCLA § 100-116, a predecessor statute of ORS 374.035, which authorized the state to bring an action

> "for the condemnation of such interests as such owner or owners may have in said real property, including any and all right of access if the real property to be acquired is for right of way purposes, and for determining the

Defendant contends, however, that *Burk* stands for the proposition that "compensation is *always* owed when abutting rights exist and are extinguished, whether by reason of conversion to a limited access highway or any other denial of access." In particular, defendant relies on the following statement in *Burk*: "When a conventional highway is established, there is attached to the abutting land an easement of access in, and to, the highway. Such easement is a property right which cannot be extinguished without compensation." *Id.* at 228. We do not perceive any tension, however, between that statement and our decision today. As explained above, we agree that an abutting landowner holds an easement of access that cannot be taken without just compensation. But that easement is not absolute; it is qualified in scope. Under the facts of this case, we conclude that the state did not "take," within the meaning of Article I, section 18, defendant's right of access when it eliminated two out of the four driveways onto defendant's property. Consequently, the trial court did not err when it excluded as irrelevant any evidence of the diminished value of defendant's property as a result of the elimination of those driveways.

## B. *ORS 374.035*

Having concluded that the state's elimination of defendant's driveways onto Highway 99W did not constitute a compensable taking within the meaning of Article I, section 18, we address defendant's statutory argument. Defendant contends that certain Oregon statutes relating to the establishment of throughways[11] protect an abutting landowner's right of access. In particular, defendant relies on ORS 374.035 for the proposition that property owners

---

compensation to be paid therefor, and the damages, if any there be, for the taking thereof."

200 Or at 227 (internal quotation marks omitted). As discussed below, we conclude that ORS 374.035 does not provide a remedy beyond that available under Article I, section 18, and therefore does not alter our holding that defendant is not entitled to compensation.

[11] A "throughway" is defined in the statutory scheme as "a highway or street especially designed for through traffic, over, from or to which owners or occupants of abutting land or other persons have no easement of access or only a limited easement of access, light, air or view, by reason of the fact that their property abuts upon the throughway or for any other reason." ORS 374.010.

must be compensated when the state takes a right of access to an abutting highway in the course of constructing a throughway.[12]

ORS 374.035 provides, in part:

"(1)   The Department of Transportation may, in the name of the state, acquire by agreement, donation or exercise of the power of eminent domain, fee title to or any interest in any real property, including easements of air, view, light and access, which in the opinion or judgment of the department is deemed necessary for the construction of any throughway, the establishment of any section of an existing state road or highway as a throughway or the construction of a service road."

Defendant argues that ORS 374.035 requires that property owners be compensated when the state takes access rights in the course of constructing or improving a throughway. In defendant's view, ORS 374.035 is a "legislative mandate" that rights of access to abutting highways be protected. Defendant primarily relies for support on this court's decision in *Douglas County v. Briggs*, 286 Or 151, 593 P2d 1115 (1979). In that case, this court interpreted ORS 374.420[13]—a provision similar to ORS 374.035 relating to the conversion of county roads into throughways—to require counties to pay property owners for the taking of their rights of access to an abutting county road. 286 Or at 156. In defendant's view, because ORS 374.035 and ORS 374.420 have nearly identical texts, the analysis in *Briggs* resolves the issue here in defendant's favor.

Defendant's argument that it is entitled to compensation under ORS 374.035, however, depends on the premise that that statute grants property owners substantive rights beyond those protected by Article I, section 18. We

---

[12]  The state does not dispute that it brought this action as part of an effort to improve and maintain the use of Highway 99W as a throughway.

[13]  ORS 374.420 provides, in part:

"(1)   The county court or board of county commissioners may acquire by purchase, agreement, donation or exercise of the power of eminent domain, fee title or any interest in real property, including easements of air, view, light and access, which is necessary for the construction of a throughway or the establishment of a section of an existing county road as a throughway."

disagree. ORS 374.035 is, fundamentally, a procedural stat-
ute. The statute provides a procedure by which the state,
in the course of establishing a throughway, may condemn
a landowner's access right to an abutting state highway.
Nothing in the statutory text suggests that, by providing
such a procedure, the legislature intended to alter the com-
mon law of eminent domain or to create a remedy to which a
landowner is not entitled under Article I, section 18. Rather,
given the legislature's reference to eminent domain, the
legislature likely intended a landowner's rights under ORS
374.035 and under Article I, section 18, to be coextensive.
*Cf. Deupree v. ODOT*, 173 Or App 623, 629-30, 22 P3d 773
(2001) ("[N]othing in [the language of ORS 105.755, which
provides compensation to abutting landowners for damages
resulting from changing the grade of a public road] sug-
gests that the legislature intended to create a remedy for
a harm for which a person is not entitled to just compen-
sation under Article I, section 18. Because the statute is
framed in terms familiar to the law of eminent domain, it
suggests precisely the opposite inference."). Accordingly, in
the absence of any developed argument by defendant, we
decline to interpret ORS 374.035 to grant new substantive
rights not protected by Article I, section 18. Therefore, just
as we have concluded that defendant is not entitled to com-
pensation under Article I, section 18, we further conclude
that defendant is not entitled to compensation under ORS
374.035.

Defendant's reliance on *Briggs* does not persuade
us to the contrary. In *Briggs*, this court concluded that the
affected property owners were entitled to compensation
under ORS 374.420, based on the legislative history of that
statute. 286 Or at 154-56. Although no similar legislative
history for ORS 374.035 exists, defendant contends, based
on the similarity in text between ORS 374.420 and ORS
374.035, that the legislative history of ORS 374.420 should
inform our interpretation of ORS 374.035. ORS 374.420,
however, was enacted nearly two decades after ORS 374.035,
and defendant has not persuasively argued why the intent of
the 1965 legislature in enacting ORS 374.420 should bear on
the intent of the 1947 legislature in enacting ORS 374.035.
*See, e.g.*, *Halperin v. Pitts*, 352 Or 482, 490, 287 P3d 1069

(2012) (later-enacted statutes are not context for what the legislature intended an earlier-enacted statute to mean).[14]

Perhaps more important than any difference between ORS 374.035 and ORS 374.420, however, is the fact that the court in *Briggs* expressly declined to reach the issue of whether the property owners were entitled to compensation under Article I, section 18, stating:

> "Constitutional issues should not be decided when there is an adequate statutory basis for decision. Therefore, we take no position one way or the other whether Article I, section 18, of the Oregon Constitution mandates payment for loss of rights of access in a situation like the present."

286 Or at 156 (footnote omitted). As a result, the court did not address the dispositive issue in this case—whether the construction or improvement of the throughway had deprived the property owners of all reasonable access to their property and thus constituted a compensable taking.

Unfortunately, the court's rationale in *Briggs* for reaching the statutory issue without deciding the constitutional issue was opaque. After recounting the legislative history of ORS 374.420, the court stated in a conclusory fashion, "There can be no doubt about the legislative intent in view of the above comments. We hold that ORS 374.420 requires the county to pay property owners for the loss of their rights of access when an established county road adjacent thereto is made into a throughway." *Briggs*, 286 Or at 156. The court did not analyze, however, what constitutes a "loss" of a property owner's right of access. In our view, the determination that ORS 374.420 requires a county to pay for the loss of a landowner's right of access should not have ended the inquiry. Rather, as discussed above, whether a

---

[14] The legislative history that the court relied on in *Briggs* reinforces our view that the statutory scheme relating to the construction of throughways was not intended to create new substantive rights with respect to what constitutes a compensable taking. If anything, that legislative history suggests that the 1965 legislature intended to codify abutting landowners' constitutional rights under Article I, section 18. *See Briggs*, 286 Or at 154 (quoting House Floor debate on HB 1067, Jan 28, 1965, Tape 4, Side 1, in which Representative Skelton expressed concern that prior version of bill "'may take from some property owners an important vested right of access without condemnation. And if it does this, then I suggest that it is in contravention of the constitution.'").

right of access has been "lost" necessarily requires a determination, under Article I, section 18, as to whether a compensable taking has occurred. The court in *Briggs* therefore appears to have misapplied the principle of constitutional avoidance. Although generally we will not decide constitutional issues when there is an adequate statutory basis for decision, neither ORS 374.035 nor ORS 374.420 provides an adequate basis for deciding the question whether a compensable taking has occurred. Both statutes are procedural in nature and do not grant substantive rights to property owners. Accordingly, to the extent that *Briggs* suggested that those statutes provide a more extensive remedy than Article I, section 18, we disavow that portion of the opinion.

### III. CONCLUSION

Although we agree with defendant that it holds a right of access to Highway 99W that may not be taken without just compensation, we disagree that the state's actions in this case constituted a compensable taking. As discussed above, a governing body may—without effecting a taking—restrict an abutting landowner's right of access for the purpose of protecting the safety of public roads, so long as reasonable access to the abutting property remains. In this case, we conclude that the state did not substantially interfere with defendant's access to Highway 99W, because defendant retains reasonable access to the highway by means of the immediately adjacent Warner Avenue. The state's elimination of the two driveways at issue in this case did not constitute a taking, and defendant is not entitled to compensation under Article I, section 18—or, by extension, under ORS 374.035—for the loss of a more direct entryway onto Highway 99W. Accordingly, the trial court did not err in granting the state's motion *in limine* to exclude evidence of the diminished value of defendant's property as a result of ODOT's actions.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.